**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

<table>
<tr>
<td>
ENDURANCE AMERICAN INSURANCE
COMPANY; CONTINENTAL CASUALTY
COMPANY; SWISS RE CORPORATE
SOLUTIONS AMERICA INSURANCE
CORPORATION; NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA;
FREEDOM SPECIALTY INSURANCE
COMPANY; QBE INSURANCE CORPORATION;
ARGONAUT INSURANCE COMPANY; XL
SPECIALTY INSURANCE COMPANY; ALLIED
WORLD NATIONAL ASSURANCE COMPANY;
NAVIGATORS INSURANCE COMPANY<br>
                         Plaintiffs,<br><br>
     v.<br><br>
UNDER ARMOUR, INC.<br>
                     Defendant.
</td>
<td>
**REDACTED**<br><br><br>
Civil Action No.  1:22-cv-02481
</td>
</tr>
</table>

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Endurance American Insurance Company ("Endurance"); Continental Casualty Company ("Continental"); Swiss Re Corporate Solutions America Insurance Corporation ("SRCSAIC"); National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"); Freedom Specialty Insurance Company ("Freedom"); QBE Insurance Corporation ("QBE"); Argonaut Insurance Company ("Argo"); XL Specialty Insurance Company ("XL"); Allied World National Assurance Company ("Allied World"); and Navigators Insurance Company ("Navigators") (collectively, the "2017-2018 Insurers"), by and through undersigned counsel, bring this action pursuant to 28 U.S.C. §§ 2201 and 2202 for Declaratory Judgment against Defendant Under Armour, Inc. ("Under Armour") and allege as follows:

1

## INTRODUCTION

1.      The 2017-2018 Insurers bring this action to obtain a judicial determination and declaration pursuant to 28 U.S.C. §§ 2201 and 2202 regarding the parties' rights and obligations under directors and officers liability policies issued by the 2017-2018 Insurers to Under Armour for the claims made period March 31, 2017 to April 30, 2018 (collectively, the "2017-2018 Policies").

2.      An actual and justiciable controversy now exists as to the respective rights, duties and obligations of the parties under the 2017-2018 Policies.

3.      Specifically, the 2017-2018 Insurers seek a declaration that the 2017-2018 Policies do not provide coverage for government investigations, shareholder demand letters, shareholder derivative actions and the lawsuit, *In re Under Armour Inc. Securities Litigation*, Case No. 1:17-cv-00388-RDB (D. Md.) (the "Securities Class Action").  Pursuant to the terms of the 2017-2018 Policies, these investigations, shareholder demand letters, shareholder derivative suits and the Securities Class Action are deemed a single **Claim** because they all arise out of the same **Wrongful Acts** and/or **Interrelated Wrongful Acts**.[1]  Such **Claim** is deemed "first made" before the March 31, 2017 inception date of the 2017-2018 Policies.  Because there is no **Claim** first made during the 2017-2018 **Policy Period**,  there is no coverage available for these matters under the 2017-2018 Policies. Additionally, coverage is separately and independently excluded for all of these matters under the 2017-2018 Policies by the Specific Matter Exclusion and the Prior Notice Exclusion.

4.      Further, Endurance seeks a declaratory judgment that it is entitled to recoupment of the $10,000,000 in limits Endurance paid to Under Armour under its 2017-2018 Endurance

---

[1] Terms in **bold** are defined in the 17-18 Endurance Primary Policy, defined *infra*.

2

Primary Policy for costs associated with government investigations and derivative demands because there is no coverage available for these matters under the 2017-2018 Policies.

## **PARTIES**

5.      Plaintiff Endurance is an insurance company incorporated under the laws of Delaware with its principal place of business in New York.  Endurance is authorized to do business in Maryland.

6.      Plaintiff Continental is an insurance company incorporated under the laws of Illinois with its principal place of business in Illinois.  Continental is authorized to do business in Maryland.

7.      Plaintiff SRCSAIC is an insurance company incorporated under the laws of Missouri with its principal place of business in New York.  SRCSAIC is authorized to do business in Maryland.

8.      Plaintiff National Union is an insurance company incorporated under the laws of Pennsylvania with its principal place of business in New York. National Union is authorized to do business in Maryland.

9.      Plaintiff Freedom is an insurance company incorporated under the laws of Ohio with its principal place of business in Ohio.  Freedom is authorized to do business in Maryland.

10.      QBE is an insurance company incorporated under the laws of Pennsylvania and has its principal place of business in New York.  QBE is authorized to do insurance business in Maryland.

11.      Plaintiff Argo is an insurance company incorporated under the laws of Illinois with its principal place of business in Illinois.  Argo is authorized to do business in Maryland.

12.     Plaintiff XL is an insurance company incorporated under the laws of Delaware with its principal place of business in Connecticut.  XL is authorized to do business in Maryland.

13.     Plaintiff Allied World is an insurance company incorporated under the laws of New Hampshire with its principal place of business in New York.  Allied World is authorized to do business in Maryland.

14.     Plaintiff Navigators is an insurance company incorporated under the laws of New York with its principal place of business in Connecticut.  Navigators is authorized to do business in Maryland.

15.     Defendant Under Armour is a Maryland corporation with its principal place of business in Maryland.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between the parties.  Under Armour is deemed to be a citizen of the State of Maryland.  None of the 2017-2018 Insurers is deemed to be a citizen of the State of Maryland.  The amount in controversy exceeds $75,000.

17.     Venue is appropriate pursuant to 28 U.S.C. § 1391.  Under Armour is a resident of Maryland, and a substantial part of the events giving rise to this action occurred in this district.

## THE SECURITIES CLASS ACTION

18.     On February 10, 2017, a shareholder of Under Armour filed a securities class complaint in the lawsuit originally captioned *Breece v. Under Armour,* Case No. 1:17-cv-00388-RDB (D. Md.) (the "Breece complaint") against Under Armour, its Chairman and CEO Kevin Plank ("Plank") and former CFO Lawrence P. Molloy ("Molloy").

4

19.     The Breece complaint alleged that the Under Armour defendants made materially false and/or misleading statements or omissions in violation of Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 thereunder.

20.     The Breece complaint alleged that, throughout the class period of April 21, 2016 to January 30, 2017, Under Armour failed to disclose material adverse facts about the company's business and operations and that its revenue and profit margins would not be able to withstand the heavy promotions, high inventory levels and ripple effects of numerous department store closures and the bankruptcy of The Sports Authority, a major customer.

21.     The Breece complaint also alleged that, although Under Armour provided continued guidance from April 21, 2016 through October 25, 2016 that the company would maintain its trend of greater than 20% annual sales growth, these statements had no basis in fact and were false when made.

22.     The Breece complaint further alleged that, in April 2016, Plank sold 1.05 million shares of Under Armour stock.  These sales allegedly were unusual and departed from Plank's prior trading patterns because he only sold shares and did not exercise options to acquire shares at the same time as he had done in the past.

23.      The Breece complaint alleged that the "truth" was revealed on January 31, 2017, when Under Armour announced weaker than expected fourth quarter earnings.  At the same time, Under Armour allegedly announced unexpectedly that Molloy would be stepping down as CFO despite having served only thirteen months in the position.

24.     The Breece complaint alleged that on this news, Under Armour's share price dropped 28% in pre-market trading on January 31, 2017 and ultimately fell $7.41/share from $28.90/share to close at $21.49/share.

25.     By order dated March 23, 2017, the District Court consolidated the Breece complaint with two other related shareholder complaints under the Securities Class Action caption.

26.     On August 9, 2017, lead plaintiffs filed a consolidated amended complaint in the Securities Class Action.

27.     On November 16, 2018, lead plaintiffs filed a consolidated Second Amended Complaint (the "SAC") in the Securities Class Action against Under Armour and Plank.  The SAC did not name Molloy as a defendant.

28.     The SAC was filed on behalf of a class of persons who acquired Under Armour common stock during the period September 16, 2015 to January 30, 2017, which fully encompasses the class period alleged in the Breece complaint.

29.     Like the Breece complaint, the SAC alleged that the Under Armour defendants misrepresented and failed to disclose that Under Armour would not be able to maintain its 20% compounded annual growth rate and that demand for its products was strong, when in fact, there was declining demand for Under Armour apparel, resulting in excess inventory that Under Armour was forced to liquidate.  This declining demand allegedly was coupled with a downturn in Under Armour's primary sales channel, with several traditional sporting goods customers forced to close stores and declare bankruptcy, including The Sports Authority, one of Under Armour's largest customers.

30.     The SAC alleged that, in order to pump up sales, senior management engaged in a form of accounting fraud through which they pressured sales staff to force unwanted inventory on Under Armour's customers and to tell customers that they could return product later, after Under Armour had booked the sales, including pressuring Dick's Sporting Goods to order more inventory than required.

6

31.     The SAC alleged that Under Armour continued to make sales to The Sports Authority even after learning that The Sports Authority was headed toward bankruptcy.

32.     The SAC alleged that the "truth" was revealed on January 31, 2017.  The SAC alleges that on that day, Under Armour announced weaker than expected fourth quarter earnings and unexpectedly announced that Molloy would be stepping down as CFO despite having served only thirteen months in the position.

33.     Like the Breece complaint, the SAC alleged unusual sales of Under Armour stock by Plank.  The SAC included allegations regarding Plank's knowledge of and monitoring of company sales and inventory management and his sale of a total of 2.3 million Under Armour shares for $138.2 million over nine days between November 2015 and April 2016, during which time the stock price allegedly was artificially inflated.

34.     On August 19, 2019, the District Court dismissed the Securities Class Action with prejudice on the basis that the SAC failed to adequately plead scienter.  The District Court entered judgment on September 9, 2019.  The plaintiffs in the Securities Class Action appealed the dismissal to the United States Court of Appeals for the Fourth Circuit.

35.     In early November 2019, while the appeal in the Securities Class Action was pending, the *Wall Street Journal* reported that the United States Department of Justice ("DOJ") and the Securities Exchange Commission ("SEC") were conducting parallel criminal and civil investigations of Under Armour's accounting practices, including whether the company shifted sales from quarter to quarter to improve the appearance of its financial performance (the "Government Investigations").

36.     On November 18, 2019, the plaintiffs in the Securities Class Action filed a Motion for Indicative Ruling under Federal Rule of Civil Procedure 62.1.

37.     On January 22, 2020, the District Court granted the Motion for Indicative Ruling. The order states: "Plaintiffs have presented new evidence which places their allegations in a new light and are highly relevant to their Exchange Act claims." *See* Securities Class Action, ECF 139 at p. 18.  The order further states that the District Court would grant plaintiffs' motion for relief from the judgment if the Court of Appeals remanded the case for that purpose.

38.     On August 13, 2020, the Court of Appeals remanded the Securities Class Action for the limited purpose of allowing the District Court to consider plaintiffs' motion for relief from the judgment.  The District Court thereafter granted the plaintiffs' motion for relief from the judgment.

39.     On September 14, 2020, the District Court consolidated three additional related actions filed in 2019 into the Securities Class Action – *Patel, et al. v. Under Armour, Inc., et al.*, Case No. 1:19-cv-03209-RDB (D. Md.), *Kraft v. Under Armour, Inc., et al.*, Case No. 1:19-cv-03502-RDB (D.Md.) and *Waronker v. Under Armour, et al.*, Docket No. 1:19-cv-03581 (D.Md.).

40.     On October 14, 2020, lead plaintiffs filed a Consolidated Third Amended Complaint ("TAC") in the Securities Class Action.  The TAC alleges a class of all persons who acquired Under Armour common stock during the period of September 16, 2015 to November 1, 2019, which fully encompasses the class period alleged in the SAC.  The TAC repeated allegations made in the Breece complaint and earlier consolidated complaints filed in the Securities Class Action.  The TAC alleged that Under Armour employed improper accounting and sales tricks to maintain a façade of consistent growth.  The TAC extended the class period previously alleged to November 1, 2019, based on the allegation that the defendants also had concealed the Government Investigations regarding the company's revenue recognition, accounting and sales practices until that time.

**DERIVATIVE MATTERS**

41.     On August 17, 2016, Under Armour received a demand for inspection of its books and records on behalf of shareholder Chad Sorensen, seeking to investigate potential wrongdoing in connection with the bankruptcy of one of Under Armour's wholesale suppliers, The Sports Authority, Inc.  Subsequently, on October 17, 2016, Under Armour's board received a derivative demand on behalf of Chad Sorensen demanding that it investigate and take action with respect to alleged false and misleading statements made by Under Armour regarding the impact of The Sports Authority's bankruptcy on Under Armour's financial outlook and insider sales.

42.     After the October 17, 2016 derivative demand from Chad Sorensen, Under Armour received various additional derivative demands, including on behalf of Shawn Luger, James Kenney, Brock Anderson, Balraj Paul, Janet Drobner, Laurie Itkin, Patricia Mioduszewski, and Dr. Scott King, asserting that the company's directors and/or officers had breached their fiduciary duties.  The letters demanded that the Board of Directors investigate, address, remedy and commence proceedings against certain directors and officers in connection with alleged misrepresentations regarding Under Armour's financial condition—including as related to the impact of The Sport's Authority's bankruptcy, declining demand for Under Armour's products, and Under Armour's ability to maintain its trend of 20% annual sales growth—and alleged self-dealing transactions by Plank.  *See* Exhibits D,E,F,G, Complaint, Docket No. 1. While the Under Armour board declined to pursue any of these derivative demands, several resulted in derivative actions, including:  (a) *James Kenney v. Kevin Plank et al.,* No. 24-C-1803939 (Md. Cir. Ct., Baltimore City); (b) *Shawn Luger v. Kevin Plank et al.,* No. 24-C-18-004314 (Md. Cir. Ct., Baltimore County); (c) *Brock Andersen et al. v. Kevin A. Plank et al.,* No. 18-cv-2239 (D. Md.);

(d) *Patricia Mioduszewski v. Kevin A. Plank, et al.,* No. 18-cv-01084 (D. Md.); and (e) *Scott King v. Kevin A. Plank, et al.,* No. 18-cv-01264 (D. Md.).

43.     Each derivative complaint alleges breaches of fiduciary duty by the Under Armour Board of Directors based on the same and/or related wrongful conduct at issue in the Securities Class Action. Like the complaints in the Securities Class Action, several of the derivative complaints allege wrongful conduct by Plank based on his sales of Under Armour stock.  In addition to the allegations related to accounting fraud and inventory manipulation, the Mioduszewski and King complaints allege that Plank engaged in related party transactions, including using a subsidiary of Plank Industries called Sagamore Development Holdings LLC in 2014 to purchase land in Baltimore's Port Covington area for $35 million.

44.     After publication of the *Wall Street Journal* report in November 2019 regarding the Government Investigations, Under Armour shareholders filed additional derivative actions, including: *Olin v. Kevin A. Plank, et al.,* No. 24-C-10-006850 (Md. Cir. Ct., Baltimore City)*; Cordell v. Plank et al.,* 24-C-20003481 (Md. Cir. Ct. Baltimore City)*; Smith v. Plank et al.,* 1:20-cv-2589 (D. Md.)*;* and *Klein v. Plank et al.,* 29-C-20-004144 (Md. Cir. Ct., Baltimore City); *Salo v. Kevin A. Plank, et al..* S4-C-20-004394 (Md. Cir. Ct. Baltimore County); and *Viskovich v. Kevin A. Plank, et al.*, Case No. 1:20-cv-03390-SAG (D. Md.). ██████████████████████████████████

████████████████████████████████████████████████████████████

██████

45.     Moreover, Under Armour also received several additional derivative demand letters from shareholders Robert Lowinger, Balraj Paul, Oscar Weller, William Robison, James Kenney and Shawn Luger, Patrick McDonald, Anthony Viskovich, Thomas Jacob, Clifford Brown, Tony Messenger and Andrew Johnson.  These letters allege, among other things that: (a) certain directors and officers had exposed Under Armour to liability in connection with alleged misleading public

statements regarding its financial condition; (b) Under Armour was engaged in "channel stuffing"; (c) Under Armour failed to disclose that it was the subject of the Government Investigations; and (d) certain directors and/or officers had traded Under Armour stock while in possession of undisclosed material adverse information.  The shareholder letters requested that the Board take steps to address the identified issues.

46.     The derivative demands (the "Derivative Demands") and derivative actions (the "Derivative Actions") referenced in Paragraphs 41-45 above are referred to collectively as the "Derivative Matters."

## THE GOVERNMENT INVESTIGATIONS



51.     Furthermore, in July 2020, the SEC issued Wells Notices to Under Armour, Plank and David Bergman (the "Wells Notices"). *See* Exhibit I, Complaint, Docket No. 1.

## THE 2016-2017 D&O POLICIES

52.     Various insurers (collectively, the "2016-2017 Insurers") issued D&O insurance policies to Under Armour for the policy period February 28, 2016 to March 31, 2017 (collectively, the "2016-2017 Policies"), as follows:

### 2016-2017 D&O Policies

|  | Layer |
|---|---|
| CONTINENTAL CASUALTY COMPANY | $10 million (Primary Policy) |
| SRCSAIC | $10 million X $10 million |
| NATIONAL UNION FIRE INSURANCE COMPANY | $10 million X $20 million |
| FREEDOM SPECIALTY INSURANCE COMPANY | $10 million X $30 million |
| EVEREST INSURANCE COMPANY | $10 million X $40 million |
| ARGONAUT INSURANCE COMPANY | $10 million X $50 million |
| ASPEN INSURANCE COMPANY | $10 million X $ 60 million |
| ALLIED WORLD INSURANCE COMPANY | $10 million X $70 million |
| NAVIGATORS INSURANCE COMPANY | $10 million X $80 million |
| ENDURANCE AMERICAN INSURANCE COMPANY | $10 million X $90 million |

53.     Under Armour reported the August 17, 2016 books and records demand and the October 17, 2016 derivative demand on behalf of Chad Sorensen, as well as the derivative demand on behalf of Shawn Luger, to the 2016-2017 Insurers during the February 28, 2016 to March 31, 2017 policy period (the "2016-2017 Policy Period").

54.     Under Armour reported the Breece complaint to the 2016-2017 Insurers during the 2016-2017 Policy Period.

55.     The 2016-2017 Insurers have acknowledged that the Securities Class Action, the Derivative Matters, and Wells Notices and subpoenas issued in connection with the Government Investigations all arise out of the same **Wrongful Acts** or **Interrelated Wrongful Acts**, as those

terms are defined in the 2016-2017 Policies, and are therefore deemed a single **Claim** first made during the 2016-2017 Policies.

56.     As such, one or more of the 2016-2017 Insurers have provided coverage under the 2016-2017 Policies for defense costs incurred in the Securities Class Action, the Derivative Matters, and Wells Notices and subpoenas issued in connection with the Government Investigations.

### THE 2017-2018 D&O POLICIES

57.     The 2017-2018 Insurers issued D&O policies to Under Armour for the policy period March 31, 2017 to April 30, 2018 (collectively, the "2017-2018 Policies"), as follows:

### 2017-2018 D&O Policies

|  | Layer |
|---|---|
| ENDURANCE AMERICAN INSURANCE COMPANY | $10 million (Primary Policy) |
| CONTINENTAL CASUALTY COMPANY | $10 million X $10 million |
| SRCSAIC | $10 million X $20 million |
| NATIONAL UNION INSURANCE COMPANY | $10 million X $30 million |
| FREEDOM   SPECIALTY   INSURANCE COMPANY | $10 million X $40 million |
| QBE INSURANCE CORPORATION | $10 million X $50 million |
| ARGONAUT INSURANCE COMPANY | $10 million X $60 million |
| XL SPECIALTY INSURANCE COMPANY | $10 million X $70 million |
| ALLIED WORLD INSURANCE COMPANY | $10 million X $80 million |
| NAVIGATORS INSURANCE COMPANY | $10 million X $90 million |

58.     Endurance issued Maryland Primary Management Liability Insurance for Public Companies Policy No. DOP 1000597602 (the "2017-2018 Endurance Primary Policy") to Under Armour for March 31, 2017 to April 30, 2018 **Policy Period** (the "2017-2018 Policy Period"). *See* Exhibit N, Complaint, Docket No. 1.

59.     The remaining 2017-2018 Insurers issued consecutive excess policies to Under Armour for the 2017-2018 Policy Period (collectively, the "2017-2018 Excess Polices").  True and correct copies of the 2017-2018 Excess Polices, with premium information redacted, are attached as Exhibits Y to GG.  Each of the 2017-2018 Excess Policies provides a $10 million limit of liability that attaches only if and when the limit(s) of liability of the underlying policies are exhausted by covered **Loss**, as defined in the 2017-2018 Endurance Primary Policy.  In that event, each of the 2017-2018 Excess Policies generally applies in accordance with the terms, conditions, and limitations of the 2017-2018 Endurance Primary Policy, unless explicitly stated otherwise in the relevant excess policy.

60.     Insuring Agreement B of the 2017-2018 Endurance Primary Policy's D&O Coverage Section states:

> The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons** and which the **Insured Persons** have become legally obligated to pay on account of a **Claim** first made against the **Insured Persons** during the **Policy Period** or during the **Discovery Period** or **Run-Off Coverage Period**, if exercised, for any **Wrongful Acts** taking place prior to **the** end of the **Policy Period** or commencement of the **Run-Off Coverage Period**.

61.     Insuring Agreement C of the 2017-2018 Endurance Primary Policy's D&O Coverage Section states:

> The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of a **Securities Claim** first made against the **Company** during the **Policy Period** or during the **Discovery Period** or **Run-Off Coverage Period**, if exercised, for any **Wrongful Acts** taking place prior to the earlier of the end of the **Policy Period** or commencement of the **Run-Off Coverage Period**.

14

62.  Section II.A of the D&O Coverage Section of the 2017-2018 Endurance Primary Policy, as amended by Endorsement No. 4, defines "**Claim**" to mean, in relevant part:

> 1.  a written demand for monetary damages or other relief, including but not limited to, a demand for injunctive relief, against any **Insured** for a **Wrongful Act**, commenced by the **Insured's** receipt of such demand,

> 2.  a civil proceeding against any **Insured** for a **Wrongful Act**, commenced by the service of a complaint or similar pleading;

> \*   \*   \*

> 6.  a formal administrative or regulatory proceeding against any **Insured** for a **Wrongful Act**, commenced by the filing of a notice of charge, formal investigative order or similar document;

> 7. a **Formal Investigation** of an **Insured**; …

63.  Insuring Agreement E. of the 2017-2018 Endurance Primary Policy ("Derivative Demand Investigative Costs") provides that:

> Insurer shall pay on behalf of the **Company** all **Investigative Costs** resulting from a **Securityholder Derivative Demand** first received by the **Company** during the **Policy Period** … for any **Wrongful Acts** taking place prior to the earlier end of the **Policy Period** or the commencement of the Run-Off Coverage Period.[2]

64.  As amended by Endorsement 10 of the 2017-2018 Endurance Primary Policy, **Investigative Costs** under Insuring Agreement E. are subject to a $350,000 Limit of Liability and $0 Retention.

65.  Endorsement No. 4 to the 2017-2018 Endurance Primary Policy defines "**Formal Investigation**" to mean "a civil, criminal, administrative or regulatory investigation against an Insured for a **Wrongful Act**, commenced by the service upon or other receipt by the **Insured** of a formal investigative order, written notice, including a Wells Notice, a target letter, subpoena, search warrant, or

---

[2] With respect to Insuring Agreement E., "Claim" means a "**Securityholder Derivative Demand.**"

a similar document from the investigating authority identifying the **Insured** as an individual or organization against whom a formal proceeding may be commenced."

66. Section II.I of the 2017-2018 Endurance Primary Policy's D&O Coverage Section, as amended by Endorsement No. 4, defines "**Securities Claim**" to mean "any **Claim** alleging a violation of any domestic or foreign law, rule or regulation, whether statutory or common law, which in whole or in part is … brought by one of more securities holders of the **Company**…."

67.      Section II.K of the 2017-2018 Endurance Primary Policy's D&O Coverage Section, as amended by Endorsement No. 4, defines "**Wrongful Act**" to mean:

> 1.  any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons** in their capacity as such, in their capacity as a **Controlling Person**, or in an **Outside Position**, or with respect to Insuring Agreement C, by the **Company**, or
>
> 2.  any matter claimed against an **Insured Person** solely by reason of his or her serving in such capacity or in an **Outside Position**; provided that this Item 2 shall not apply to an **Insured Person** in his or her capacity as a partner in a **Company** or an **Outside Entity** that is a partnership.

68.      Section II.O of the 2017-2018 Endurance Primary Policy's General Terms & Conditions defines "**Interrelated Wrongful Act**" to mean:

> . . . all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

66.      Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, as amended by Endorsement No. 4, states:

> C. SINGLE CLAIMS

All **Claims** which arise out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of **Insureds** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period**.

All **Claims** and **Inquiries** that arise out of the same fact, circumstance, situation, event, or **Wrongful Act**, or facts, circumstances, situations, events or **Wrongful Acts** that are logically or causally related shall be deemed one **Claim**, which shall be deemed to be first made on the earliest that the first of any such **Claims** is made, or the first of any such **Inquiries** is received by an **Insured Person** ...

67.    The Prior Notice exclusion in the 2017-2018 Endurance Primary Policy's D&O Coverage Section, as amended by Endorsement No. 4, states:

A. The insurer shall not be liable under this Coverage Section for **Loss** on account of that portion of any **Claim** made against any Insured:

1. based upon, arising out of, or attributable to any facts, circumstances, or situation which has been the subject of any written notice given under any directors and officers liability policy of which this Coverage Section is a direct or indirect renewal or replacement and accepted by the insurer of such policy as a notice of circumstances...

68.    The Specific Matter Exclusion in the 2017-2018 Endurance Primary Policy, set forth in Endorsement No. 2, states:

The Insurer shall not be liable for that portion of **Loss** on account of any **Claim** resulting from any litigation, claim, proceeding, event, or other matter described below, or any **Wrongful** Act or **Interrelated Wrongful Act** alleged therein:

- Notice dated September 2, 2016, submitted under Continental Casualty Company ("CNA") policy number 425631668 and all policies written specifically excess thereto (collectively, "the 2016-17 UA D&O Tower") enclosing the August 11, 2016 Demand Letter for the inspection of Books and Records sent by Levi & Korsinsky, LLP on behalf of Chad Sorensen to the Board of Directors of Under Armour ("UA")

17

- Notice dated November 4, 2016 submitted under the 2016-17 UA D&O Tower, enclosing the October 17, 2016 Demand upon the Board of Directors of UA to Investigate Claims, Initiate Legal Action and Take Necessary and Appropriate Remedial Measures sent by Levi & Korsinsky on behalf of Chad Sorensen to the Board of Directors of UA

- Notice dated February 16, 2017, submitted under the 2016-17 UA D&O Tower, enclosing the Class Action Complaint styled Brian Breece v. Under Armour, et al. (Case 1:17-cv-00388-RDB) filed on February 1, 2017 in the United States District Court for the District of Maryland

- Notice dated March 8, 2017, submitted under the 2016-17 UA D&O Tower, enclosing the shareholder demand Pursuant to Maryland law sent by Profy, Pomisloff & Ciarlanto, P.C. on behalf of Shawn Luger to Kevin A. Plank, Chief Executive Officer and Chairman of the Board of Directors of UA

**Interrelated Wrongful Acts** means the **Wrongful Acts** that have as a common nexus the fact, circumstance, situation, event, transaction or series of causally connected facts, circumstances, situations, events or transactions.

69.     Endurance made its final payment of **Defense Costs** in November 2019, thereby fully exhausting its $10 million limit of liability by issuing total payments of: (1) $9,650,000 for the Government Investigations; and (2) $350,000 towards Under Armour's investigation of Derivative Demands for which the Company sought coverage under the Derivative Demand Investigation Coverage Part of the Endurance Primary Policy.

## COUNT I

### Declaratory Judgment that the Securities Class Action Is a Claim First Made Before the 2017-2018 Policy Period

70.     The 2017-2018 Insurers incorporate by reference each of the allegations of paragraph 1 through 69 of this Complaint.

71.     The Securities Class Action is a civil legal proceeding.  The Securities Class Action is a **Claim**, as that term is defined by the 2017-2018 Endurance Primary Policy.

72.     The initial complaint in the Securities Class Action, the Breece complaint, was filed on February 10, 2017.

73.     The amended complaints filed in the Securities Class Action, including the SAC and the TAC, did not commence separate legal proceedings but rather are complaints filed in an existing legal proceeding, with each replacing the version that came before.  Different iterations of complaints filed in the Securities Class Action, including the Breece complaint, the SAC and the TAC, therefore are not new or separate **Claims**, as that term is defined by the 2017-2018 Endurance Primary Policy.

74.     The Securities Class Action is a single **Claim** that was first made before the 2017-2018 Policy Period.

75.     Each of the amended complaints filed in the Securities Class Action, including the SAC and TAC, arises out of the same **Wrongful Acts** and **Interrelated Wrongful Acts** as the Breece complaint and thus, pursuant to Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, the Breece complaint, SAC and TAC constitute a single **Claim**, first made before the 2017-2018 Policy Period.

76.     Accordingly, the 2017-2018 Insurers respectfully request that the Court declare that the Securities Class Action is a **Claim** that was first made during the 2016-2017 Policy Period and therefore is not covered by the 2017-2018 Policies.

**COUNT II**

**Declaratory Judgment that the Government Investigations Are Claims That Are Deemed First Made Before the 2017-2018 Policy Period**

77.     The 2017-2018 Insurers incorporate by reference each of the allegations of paragraphs 1 through 76 of this Complaint.

78.     The Government Investigations are **Formal Investigations**, as that term is defined by the 2017-2018 Endurance Primary Policy.  As such, the Government Investigations are a **Claim**.

79.     The Government Investigations arise out of the same **Wrongful Acts** and **Interrelated Wrongful Acts** as the Securities Class Action, as well as the Derivative Matters. As a result, pursuant to Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, the Government Investigations and the Securities Class Action are deemed to constitute one **Claim**, and such **Claim** is deemed to have been first made before March 31, 2017, no later than when the Securities Class Action was commenced.

80.     Accordingly, the 2017-2018 Insurers respectfully request that the Court declare that the Government Investigations are a **Claim** that is deemed to have been first made during the 2016-2017 Policy Period and therefore not covered by the 2017-2018 Policies.

**COUNT III**

**Declaratory Judgment that the Derivative Matters Are Claims Deemed First Made Before the 2017-2018 Policy Period**

81.     The 2017-2018 Insurers incorporate by reference each of the allegations in paragraph 1 through 80 of this Complaint.

82.     The Derivative Demands are **Security Holder Derivative Demands** and therefore **Claims**, as those terms are defined in the 2017-2018 Endurance Primary Policy.

83.     The Derivative Actions are civil legal proceedings.  As such, the Derivative Actions are **Claims**, as that term is defined by the 2017-2018 Endurance Primary Policy.

84.     The Derivative Matters arise out of the same **Wrongful Acts** and/or **Interrelated Wrongful Acts** as the Securities Class Action, as well as those Derivative Demands issued during the 2016-2017 Policy Period.  As a result, pursuant to Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, the Derivative Matters and the Securities Class Action are deemed to constitute one **Claim**, and such **Claim** is deemed to have been first made before March 31, 2017, no later than when the Securities Class Action was commenced.

85.     Accordingly, the 2017-2018 Insurers respectfully request that the Court declare that the Derivative Matters are part of a single **Claim** that is deemed to have been first made during the 2016-2017 Policy Period and therefore is not covered by the 2017-2018 Policies.

### COUNT IV

**Declaratory Judgment that the Specific Matter Exclusion Bars Coverage For the Securities Class Action, the Derivative Actions and the Government Investigations Under the 2017-2018 Policies**

86.     The 2017-2018 Policies incorporates by reference each of the allegations of paragraphs 1 through 85 of this Complaint.

87.     The Specific Matter Exclusion (Endorsement No. 2 to the 2017-2018 Endurance Primary Policy to which the 2017-2018 Excess Policies follow form) bars coverage for:

> . . . **Loss** on account of any **Claim** resulting from any litigation, claim proceeding, event, or other matter described below, or any **Wrongful Act** or **Interrelated Wrongful Act** alleged therein:
>
> - Notice dated September 2, 2016, submitted under Continental Casualty Company ("CNA") policy number 425631668 and all policies written specifically excess thereto (collectively, "the 2016-17 UA D&O Tower") enclosing the August 11, 2016 Demand Letter for the inspection of Books and Records sent by

Levi & Korsinsky, LLP on behalf of Chad Sorensen to the Board of Directors of Under Armour ("UA")

- Notice dated November 4, 2016 submitted under the 2016-17 UA D&O Tower, enclosing the October 17, 2016 Demand upon the Board of Directors of UA to Investigate Claims, Initiate Legal Action and Take Necessary and Appropriate Remedial Measures sent by Levi & Korsinsky on behalf of Chad Sorensen to the Board of Directors of UA

- Notice dated February 16, 2017, submitted under the 2016-17 UA D&O Tower, enclosing the Class Action Complaint styled Brian Breece v. Under Armour, et al. (Case 1:17-cv-00388-RDB) filed on February 1, 2017 in the United States District Court for the District of Maryland

- Notice dated March 8, 2017, submitted under the 2016-17 UA D&O Tower, enclosing the shareholder demand Pursuant to Maryland law sent by Profy, Pomisloff & Ciarlanto, P.C. on behalf of Shawn Luger to Kevin A. Plank, Chief Executive Officer and Chairman of the Board of Directors of UA

88.     The Breece lawsuit referenced in the Specific Matter Exclusion is the Securities Class Action.  The Derivative Matters are a **Claim** resulting from any litigation, claim, proceeding, event or other matter at issue in the Securities Class Action and/or those Derivative Matters specifically identified in the Specific Matter Exclusion, or any **Wrongful Act** or **Interrelated Wrongful Act** (as defined by Endorsement No. 2) alleged therein.

89.     The Government Investigations are a **Claim** resulting from any litigation, claim, proceeding, event or other matter at issue in the Securities Class Action and/or those Derivative Matters specifically identified in the Specific Matter Exclusion, or any **Wrongful Act** or **Interrelated Wrongful Act** (as defined by Endorsement No. 2) alleged therein.

90.     The Specific Matter Exclusion bars coverage for the Securities Class Action, the Derivative Matters, and the Government Investigations.

91.     Accordingly, the 2017-2018 Insurers respectfully request that the Court declare that coverage under the 2017-2018 Policies for the Securities Class Action, the Derivative Matters, and the Government Investigations is excluded by the Specific Matter Exclusion.

## COUNT V

**Declaratory Judgment that the Prior Notice Exclusion Bars Coverage for the Securities Class Action, the Derivative Actions and the Government Investigations Under the 2017-2018 Policies**

92.     The 2017-2018 Insurers incorporate by reference each of the allegations of paragraph 1 through 91 of this Complaint.

93.     The Prior Notice Exclusion (Section III.A.1 of the 2017-2018 Endurance Primary Policy's D&O Coverage Section, as amended by Endorsement No. 4) states:

> A. The insurer shall not be liable under this Coverage Section for **Loss** on account of that portion of any **Claim** made against any **Insured**:
>
> 1. based upon, arising out of, or attributable to any facts, circumstances, or situation which has been the subject of any written notice given under any directors and officers liability policy of which this Coverage Section is a direct or indirect renewal or replacement and accepted by the insurer of such policy as a notice of circumstances...

94.     On February 16, 2017, Under Armour provided notice of the Securities Class Action to one or more of the insurers who issued the 2016-2017 Policies.  Such notice was accepted by one or more of such insurers pursuant to the 2016-2017 Policies, and such insurers have been providing coverage for the Securities Class Action under the 2016-2017 Policies.

95.     The Securities Class Action, including the TAC, is based upon, arises out of, and is attributable to any of the facts, circumstances and situations that were the subject of the February 16, 2017 notice to one or more of the insurers who issued the 2016-2017 Policies regarding the Securities

Class Action.  One or more of the insurers who issued such 2016-2017 Policies accepted such notice pursuant to the 2016-2017 Policies.

96.     The Derivative Matters are based upon, arise out of, and are attributable to any of the facts, circumstances and situations that were the subject of Under Armour's notices pursuant to the 2016-2017 Policies sent on September 2, 2016, November 4, 2016, February 16, 2017 and/or March 8, 2017.  One or more of the insurers who issued such 2016-2017 Policies accepted such notices pursuant to the 2016-2017 Policies.

97.     The Government Investigations are based upon, arise out of, and are attributable to any of the facts, circumstances and situations that were the subject of Under Armour's notices to the 2016-2017 Insurers.  One or more of the insurers who issued such 2016-2017 Policies accepted such notice pursuant to the 2016-2017 Policies.

98.     Accordingly, the 2017-2018 Insurers respectfully request that the Court declare that the Prior Notice Exclusion bars coverage for the Securities Class Action, the Derivative Matters and the Government Investigations under the 2017-2018 Policies.

### COUNT VI

**Declaratory Judgment that Endurance is Entitled to Recoup the $9,650,000 Endurance Paid for Defense Costs for the Government Investigations Under the 2017-2018 Endurance Primary Policy Limit**

99.     Endurance incorporates by reference each of the allegations in paragraph 1 through 98 of this Complaint.

100.     Pursuant to Section VII. (Defense and Settlement) of the 2017-2018 Endurance Primary Policy, as amended by Endorsement No. 4, "Any advancement of **Defense Costs** shall be repaid to the Insurer by the Insurers … any **Defense Costs** finally established not to be insured."

101.   Because the Government Investigations do not constitute a **Claim** first made under the 2017-2018 Endurance Primary Policy, Endurance is entitled to a declaratory judgment that is may recoup the $9,650,000 million Endurance paid to Under Armour in advancement of defense costs for the Government Investigations.

## COUNT VII

### Declaratory Judgment that Endurance is Entitled to Recoup the $350,000 Endurance Paid for Investigative Costs for the Derivative Demands Under the 2017-2018 Endurance Primary Policy Limit

102.   Endurance incorporates by references each of the allegations of paragraph 1 through 101 of this Complaint.

103.   Endurance advised Under Armour that its advancement of **Investigative Costs** was subject to a potential right of recoupment to the extent coverage was subsequently determined not to be available for the Derivative Demands under the 2017-2018 Endurance Primary Policy.

104.   Because the Derivative Demands do not constitute a **Claim** first made under the 2017-2018 Endurance Policy, Endurance is entitled to a declaratory judgment that it may recoup the $350,000 Endurance paid to Under Armour in advancement of **Investigative Costs** for the Derivative Demands.

## **PRAYER FOR RELIEF**

WHEREFORE, the 2017-2018 Insurers respectfully requests that this Court enter judgment against Under Armour and requests that the 2017-2018 Insurers be awarded the following relief:

1. As to Count I, a declaration that the 2017-2018 Policies do not provide coverage for the Securities Class Action because the Securities Class Action is a **Claim** that was first made during the 2016-2017 Policy Period.

25

2.  As to Count II, a declaration that the 2017-2018 Policies do not provide coverage for the Government Investigations because they are deemed part of a **Claim** first made during the 2016-2017 Policy Period.

3.  As to Count III, a declaration that the 2017-2018 Policies do not provide coverage for the Derivative Matters because they are a deemed part of a **Claim** first made during the 2016-2017 Policy Period.

4.  As to Count IV, a declaration that the Specific Matter Exclusion bars coverage for the Securities Class Action, the Derivative Matters, and the Government Investigations under the 2017-2018 Policies.

5.  As to Count V, a declaration that the Prior Notice Exclusion bars coverage for the Securities Class Action, the Derivative Matters, and the Government Investigations under the 2017-2018 Policies.

6.  As to Count VI, Endurance requests a declaration that Endurance is entitled to recoup the entire $9,650,000 it advanced to Under Armour as **Defense Costs** under the 2017-2018 Endurance Policy.

7.  As to Count VII, Endurance requests a declaration that Endurance is entitled to recoup the entire $350,000 it advanced to Under Armour as Derivative Demand **Investigative Costs** under the 2017-2018 Endurance Policy.

8.  An award for such additional relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, by and through undersigned counsel, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all triable issues.

Date:  January 26, 2023                    Respectfully submitted,

/s/ John R. Solter                              /s/ Erica Kerstein
John R. Solter, Jr., Esquire (Bar No. 27483)    (admitted *pro hac vice*)
AZRAEL, FRANZ, SCHWAB, LIPOWITZ                 ROBINSON & COLE LLP
& SOLTER, LLC                                   Chrysler East Building
101 East Chesapeake Avenue, Fifth Floor         666 Third Avenue, 20th Floor
Baltimore, MD 21286                             New York, NY 10017
(410) 821-6800                                  (212) 451-2970
jsolter@azraelfranz.com                         ekerstein@rc.com

*Attorneys for Endurance American*              *Attorneys for Endurance American Insurance*
*Insurance Company, Swiss Re Corporate*         *Company*
*Solutions America Insurance Corporation,*
*Allied World National Assurance Company,*
*Freedom Specialty Insurance Company*

/s/ Karen Ventrell                              /s/ Michael P. O'Day
Karen Ventrell (MD Bar #28218)                  Michael P. O'Day
CNA                                             Bar No. 27075
Corporate Litigation                            DLA Piper LLP (US)
2020 K. Street, NW Suite 750                    The Marbury Building
Washington, DC 20006                            6225 Smith Avenue
karen.ventrell@cna.com                          Baltimore, MD 21209-3600
Tel. (202) 416-4762                             Tel.: 410-580-3000
Fax (312) 260-4568                              Fax.: 410-580-3001
                                                michael.oday@us.dlapiper.com

                                                *Attorney for National Union Fire Insurance*
                                                *Company of Pittsburgh, PA*

/s/ John J. Murphy                              /s/ Kimberly M. Melvin
WALKER, MURPHY & NELSON, LLP                    Kimberly M. Melvin
John J. Murphy, Esq. (Bar No. 14407)             (*pro hac vice* forthcoming)
9210 Corporate Boulevard, Suite 320             Margaret T. Karchmer
Rockville, MD 20850                              (*pro hac vice* forthcoming)
Tel. (301) 519-9150                             WILEY REIN LLP
Fax: (301)519-9152                              2050 M Street, N.W.
jmurphy@walkermurphy.com                        Washington, DC 20036
                                                kmelvin@wiley.law
*Attorneys for Argonaut Insurance Company*      mkarchmer@wiley.law
*and Navigators Insurance Company*              Tel. (202) 719-7000
                                                Fax (202) 719-7049

27

*Attorneys for Continental Casualty Company*

/s/ Gabriela Richeimer
Gabriela Richeimer
 (Bar No. 15774)
Meredith E. Werner
 (*pro hac vice forthcoming*)
Ericka R. Lenz
 (*pro hac vice forthcoming*)
CLYDE & CO US LLP
1775 Pennsylvania Ave. NW, 4th Floor
Washington, DC 21202
Phone (202) 747-5100
Gabriela.Richeimer@clydeco.us
Meredith.Werner@clydeco.us
Ericka.Lenz@clydeco.us

*Attorneys for XL Specialty Insurance
Company*

/s/ Paul T. Curley
Paul T. Curley
 (*pro hac vice* application to be filed)
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Drive
Valhalla, NY  10595
(914) 449-1019
pcurley@kbrlaw.com

*Attorneys for Swiss Re Corporate Solutions
America Insurance Corporation*

/s/ Gordon Smith
Gordon Smith (MD Bar No. 21749)
Travis Wall (*pro hac vice* to be filed)
KENNEDYS CMK LLP
455 Market Street, Suite 1900
San Francisco, CA 94105
gordon.smith@kennedyslaw.com
Tel.: 415-323-4460
Fax: 415-323-4445
*Attorneys for Allied World National Assurance
Company*

/s/ Gabriela Richeimer
Gabriela Richeimer  (Bar No. 15774)
Leslie S. Ahari (*pro hac vice* forthcoming)
Stacey E. Rufe (*pro hac vice* forthcoming)
CLYDE & CO US LLP
1775 Pennsylvania Avenue, N.W., 4th Floor
Washington, DC 21202
(202) 747-5100
Gabriela.Richeimer@clydeco.us
Leslie.ahari@clydeco.us
Stacey.rufe@clydeco.us

*Attorneys for QBE Insurance Corporation*

Darius N. Kandawalla
 (*pro hac vice* to be filed)
Jordan W. Ziolkowski
 (*pro hac vice* to be filed)
BAILEY CAVALIERI LLC
10 W. Broad Street, Ste. 2100
Columbus, OH  43215
Tel. 614-221-3155
Fax 614-221-0479
dkandawalla@baileycav.com
jziolkowski@baileycav.com

*Attorneys for Freedom Specialty Insurance
Company*

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this 26 day of January, 2023 notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing via the Court's CM/ECF System.


*/s/ John R. Solter* _____