**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ENDURANCE AMERICAN INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; FREEDOM SPECIALTY INSURANCE COMPANY; QBE INSURANCE CORPORATION; ARGONAUT INSURANCE COMPANY; XL SPECIALTY INSURANCE COMPANY; ALLIED WORLD NATIONAL ASSURANCE COMPANY; NAVIGATORS INSURANCE COMPANY,<br><br>      Plaintiffs/Counterclaim-Defendants,<br><br>  -*vs*-<br><br>UNDER ARMOUR, INC.,<br><br>      Defendant/Counterclaim-Plaintiff. | Civil Action No. 1:22-cv-02481-RDB<br><br>**PUBLIC VERSION** |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT QBE INSURANCE CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO UNDER ARMOUR, INC.'S COUNTERCLAIMS**

Plaintiff/Counterclaim-Defendant QBE Insurance Corporation ("QBE"), by counsel, submits the following Answer and Affirmative Defenses to the Counterclaims filed by Defendant/Counterclaim-Plaintiff Under Armour, Inc. ("Under Armour") on February 9, 2023 (the "Counterclaims").

**ANSWER TO COUNTERCLAIMS**

The responses in QBE's Answer are numbered to correspond to the paragraphs in the Counterclaims. For ease of reference, the headings in this Answer reference the headings in the Counterclaims. To the extent the headings make any factual allegations or legal assertions, QBE

denies such allegations and assertions. Pursuant to Rule 8(b)(3) of the Federal Rules of Civil Procedure, QBE denies all allegations in the Counterclaims except as specifically admitted below.

## PARTIES

1. Admitted, upon information and belief.

2. Admitted, upon information and belief.

3. Admitted, upon information and belief.

4. Admitted, upon information and belief.

5. Admitted, upon information and belief.

6. Admitted, upon information and belief.

7. Admitted.

8. Admitted, upon information and belief.

9. Admitted, upon information and belief.

10. Admitted, upon information and belief.

11. Admitted, upon information and belief.

## JURISDICTION AND VENUE

12. Paragraph 12 consists of legal conclusions to which no response is required. To the extent a response is required, QBE does not dispute subject matter jurisdiction.

13. Paragraph 13 consists of legal conclusions to which no response is required. To the extent a response is required, QBE does not dispute that venue is proper.

**THE DISPUTE BETWEEN UNDER ARMOUR AND COUNTERCLAIM-DEFENDANTS**

*The 2017-2018 D&O Policies*

14. The allegations in Paragraph 14 are not directed to QBE and therefore no response

is required. To the extent a response is required, QBE states that the 2017-2018 Endurance Primary Policy speaks for itself, and QBE denies any allegation inconsistent with the 2017-2018 Endurance Primary Policy.

15. To the extent the allegations of Paragraph 15 are not directed to QBE no response is required. To the extent a response is required, QBE states that QBE issued Excess Liability Insurance Policy No. QPL0609422 (the "QBE Excess Policy") to Under Armour for the period March 31, 2017 to March 31, 2018 and extended to April 30, 2018, a true and correct copy of which is attached, with premium information redacted, as Exhibit CC to the First Amended Complaint, Docket No. 29. QBE denies any allegation inconsistent with the QBE Excess Policy.

16. To the extent the allegations of Paragraph 16 are not directed to QBE no response is required. The allegations in Paragraph 16 purport to characterize the 2017-2018 Excess Policies, which speak for themselves. QBE denies any allegation inconsistent with the 2017-2018 Excess Policies.

17. To the extent the allegations of Paragraph 17 are not directed to QBE no response is required. The allegations in Paragraph 17 purport to characterize the 2017-2018 D&O Policies, which speak for themselves. QBE denies any allegation inconsistent with the 2017-2018 D&O Policies.

18. To the extent the allegations of Paragraph 18 are not directed to QBE no response is required. The allegations in Paragraph 18 purport to characterize the 2017-2018 D&O Policies, which speak for themselves. QBE denies any allegation inconsistent with the 2017-2018 D&O Policies.

19. To the extent the allegations of Paragraph 19 are not directed to QBE no response is required. The allegations in Paragraph 19 purport to characterize the 2017-2018 D&O Policies,

which speak for themselves. In addition, QBE denies the allegations in Paragraph 19 insofar as it is a partial quotation of the allocation clause in the 2017-2018 Endurance Primary Policy, which speaks for itself. QBE denies any allegation inconsistent with the 2017-2018 D&O Policies.

20. Paragraph 20 consists of legal conclusions to which no response is required. To the extent a response is required, QBE admits only that the 2017-2018 D&O Policies are documents which speak for themselves.

### *The Securities Class Actions Prior to November 2019*

21. QBE admits that, on February 10, 2017, Brian Breece filed a complaint (the "Breece Complaint") against Under Armour, Chairman and CEO Kevin Plank, and former CFO Lawrence Molloy in the proceeding now captioned *In re Under Armour Securities Litigation,* Case No. 1:17-cv-00388-RDB (D. Md.) (the "Securities Class Action"), and that the Breece Complaint is publicly available as ECF No. 1 in the Securities Class Action. The Breece Complaint speaks for itself and QBE denies that the allegations in paragraph 21 fully, fairly or accurately summarize or characterize the Breece Complaint and expressly denies the characterization of the Breece Complaint as an "initial" complaint.

22. The allegations in Paragraph 22 purport to characterize the Breece Complaint, which is publicly available as ECF No. 1 in the Securities Class Action and which speaks for itself. QBE denies that the allegations of Paragraph 22 fully, fairly or accurately summarize or characterize the Breece Complaint.

23. QBE admits that, on March 23, 2017, this Court issued an order, which is publicly available as ECF No. 3 in the Securities Class Action and which speaks for itself. QBE denies that the allegations in paragraph 23 fully, fairly, or accurately summarize or characterize this order.

24.     QBE admits that the filings in the Securities Class Action are documents that speak for themselves.  QBE denies that the allegations in paragraph 24 fully, fairly, or accurately summarize or characterize the allegations in the Securities Class Action.

*The Government Investigations*

25.      █████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
██████████████████████████

26.     ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

27.     ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
████████

28.     ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

29. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

30. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

31. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███

32. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

33. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

34. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████

*The Securities Class Action After November 30, 2019*

35.     QBE admits that, in early November 2019, the *Wall Street Journal* reported that the DOJ and SEC were conducting parallel criminal and civil investigations of Under Armour's accounting practices, including whether the company shifted sales from quarter to quarter to improve the appearance of its financial performance.

36.     QBE admits that three putative securities class action complaints were filed in 2019 in the proceedings captioned, *Patel, et al. v. Under Armour, Inc., et al.,* Case No. 1:19-cv-03209-RDB (D. Md.); *Kraft v. Under Armour, Inc., et al.*, Case No. 1:19-cv-03502-RDB (D. Md.); and *Waronker v. Under Armour, et al.*, Docket No. 1:19-cv-03581 (D. Md.). These documents speak for themselves. QBE denies that the allegations in paragraph 36 fully, fairly, or accurately summarize or characterize these complaints.

37.     QBE admits that, on September 14, 2020, the Court issued an order, which is publicly available as ECF No. 150 in the Securities Class Action and which speaks for itself. QBE denies that the allegations in paragraph 37 fully, fairly, or accurately summarize or characterize this order.

38.     QBE admits that, on October 14, 2020, lead plaintiffs filed a Consolidated Third Amended Complaint in the Securities Class Action (the "TAC"), which is publicly available as ECF No. 153 in the Securities Class Action and speaks for itself. QBE denies that the allegations in paragraph 38 fully, fairly, or accurately summarize or characterize the TAC.

### *The Derivative Matters*

39. QBE admits, on information and belief, that Under Armour received derivative demands between 2016 and 2019, including but not limited to those attached as Exhibits D to G of the original complaint in this coverage litigation. QBE states that Exhibits D to G of the Complaint speak for themselves and denies any characterization of the derivative demands that are inconsistent with the documents.

40. QBE admits, on information and belief, that Dr. Scott King and Patricia Mioduszewski sent demand letters dated May 25, 2017, and May 30, 2017, respectively, which letters speak for themselves. QBE denies any allegation inconsistent with the May 25, 2017 and May 30, 2017 letters and denies all remaining allegations in Paragraph 40.

41. Admitted.

42. The allegations in Paragraph 42 purport to characterize certain derivative demands and lawsuits, which speak for themselves. QBE denies that the allegations in Paragraph 42 fully, fairly, or accurately summarize or characterize the allegations in the derivative demands and/or derivative lawsuits referenced in Paragraph 42.

43. Admitted.

### *The Coverage Dispute*

44. Paragraph 44 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 44.

45. Paragraph 45 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 45.

46. The allegations in Paragraph 46 consist of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 46.

47.     Paragraph 47 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegation in Paragraph 47.

48.     Paragraph 48 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegation in Paragraph 48.

49.     Paragraph 49 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 49.

50.     Paragraph 50 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 50.

51.     To the extent that the allegations in Paragraph 51 are not directed to QBE, no response is required. To the extent a response is required, QBE admits that Under Armour has noticed certain matters under the QBE Excess Policy. QBE denies the remaining allegations of Paragraph 51.

52.     The allegations in Paragraph 52 are not directed to QBE and therefore no response is required.

53.     To the extent the allegations in Paragraph 53 are not directed to QBE no response is required. To the extent a response is required, QBE admits that it denied coverage under the QBE Excess Policy for the Securities Class Action, the SEC Investigation, and the other matters noticed by Under Amour under the QBE Excess Policy. QBE's coverage correspondence speaks for itself, and QBE denies any allegation inconsistent with such documents.

54.     The allegations in Paragraph 54 are not directed to QBE and therefore no response is required.

55.     The allegations in Paragraph 55 are not directed to QBE and therefore no response is required.

56. The allegations in Paragraph 56 are not directed to QBE and therefore no response is required. To the extent a response is required, QBE states that it lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 56 and therefore denies such allegations.

57. To the extent the allegations in Paragraph 57 are not directed to QBE no response is required. QBE admits that it issued QBE Excess Insurance Policy No. 100006975 to Under Armour for the period April 30, 2019 to April 30, 2020 (the "QBE 2019-2020 Excess Policy") QBE states that the QBE 2019-2020 Excess Policy speaks for itself. QBE denies any allegations in Paragraph 57 contrary to, misconstruing and/or mischaracterizing the QBE 2019-2020 Excess Policy.

58. To the extent the allegations in Paragraph 58 are not directed to QBE no response is required. To the extent that the allegations in Paragraph 58 constitute legal conclusions no response is required. To the extent a response is required, QBE denies such allegations.

59. The allegations in paragraph 59 state legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in paragraph 59.

60. Paragraph 60 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations and denies that Under Armour is entitled to any of the relief that it seeks.

61. The allegations in paragraph 61 state legal conclusions to which no response is required. To the extent a response is required, QBE does not dispute the existence of an actual controversy between itself and Under Armour regarding coverage under the QBE Excess Policy.

62. Paragraph 62 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 62.

## CAUSES OF ACTION

### COUNT I – Declaratory Judgment
### (Against Endurance)

63. QBE incorporates by reference its responses to Paragraphs 1 to 62 above as though fully set forth therein.

64. The allegations in Paragraph 64 are not directed to QBE and therefore no response is required.

65. To the extent that the allegations in paragraph 65 are not directed to QBE and consist of legal conclusions, no response is required. To the extent a response is required, QBE denies the allegations in paragraph 65.

66. To the extent that the allegations in paragraph 66 are not directed to QBE and consist of legal conclusions, no response is required. To the extent a response is required, QBE denies the allegations in paragraph 66.

67. The allegations in Paragraph 67 are not directed to QBE and therefore no response is required. To the extent a response is required, QBE denies the allegations and denies that Under Armour is entitled to any of the relief it seeks.

68. The allegations in Paragraph 68 are not directed to QBE and therefore no response is required.

69. The allegations in Paragraph 69 are not directed to QBE and therefore no response is required.

### COUNT II – Breach of Contract
### (Against all Counterclaim-Defendants)

70. QBE incorporates by reference its responses to Paragraphs 1 to 69 above as though fully set forth therein.

71. Paragraph 71 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies that the allegations in Paragraph 71 fully set forth the terms of the 2017-2018 D&O Policies, which documents speak for themselves.

72. Paragraph 72 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in paragraph 72.

73. Paragraph 73 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in paragraph 73.

74. Paragraph 74 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in paragraph 74.

75. Paragraph 75 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in paragraph 75.

76. Paragraph 76 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in paragraph 76.

77. Paragraph 77 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 77.

78. Paragraph 78 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegation in Paragraph 78 and denies that Under Armour is entitled to any of the relief that it seeks.

### Count III – Declaratory Judgment
### (Against all Counterclaim-Defendants)

79. QBE incorporates by reference its responses to Paragraphs 1 to 78 above as though fully set forth therein.

80. The allegations in paragraph 80 state legal conclusions to which no response is required. To the extent a response is required, QBE does not dispute that there is an actual controversy between QBE and Under Armour.

81. Paragraph 81 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 81.

82. Paragraph 82 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 82.

83. Paragraph 83 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 83.

84. Paragraph 84 consists of legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations in Paragraph 84.

85. The allegations in Paragraph 85 are legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations and denies that Under Armour is entitled to any of the relief it seeks.

86. The allegations in Paragraph 86 are legal conclusions to which no response is required. To the extent a response is required, QBE denies the allegations and denies that Under Armour is entitled to any of the relief it seeks.

## **PRAYER FOR RELIEF**

The unnumbered paragraphs following Paragraph 86 contain Under Armour's request for relief, to which no response is required. To the extent a response is required, QBE denies that Under Armour is entitled to any such relief. QBE hereby denies any allegations it has not expressly

admitted to or which it has not otherwise responded.

## AFFIRMATIVE DEFENSES

As separate and distinct defenses to the Counterclaims and to each cause of action therein alleged against QBE, QBE, without conceding that it bears the burden of proof as to any of the defenses listed herein, asserts the following defenses and reserves the right to assert other defenses if and when they become appropriate and/or available in this action.

## FIRST AFFIRMATIVE DEFENSE

Under Armour's Counterclaim is barred or limited because the Securities Class Action is a single Claim that was first made before the 2017-2018 Policy Period. Each of the amended complaints filed in the Securities Class Action arises out of the same **Wrongful Acts** and **Interrelated Wrongful Acts** as the Breece Complaint and thus, pursuant to Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, these complaints constitute a single **Claim**, first made before the 2017-2018 Policy Period. Therefore, the Securities Class Action is a **Claim** first made during the 2016-2017 Policy Period and is not covered by the policies issued to Under Armour for the 2017-2018 Policy Period, including the QBE Excess Policy (collectively, the "2017-2018 Policies").

## SECOND AFFIRMATIVE DEFENSE

Under Armour's Counterclaim is barred or limited because the Government Investigations are **Claims** that arise out of the same **Wrongful Acts** and **Interrelated Wrongful Acts** as the Securities Class Action, as well as the Derivative Matters (defined in the Amended Complaint). As a result, pursuant to Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, the Government Investigations and the Securities Class Action are deemed to constitute one **Claim**, and such **Claim** is deemed to have been first made before March 31, 2017,

no later than when the Securities Class Action was commenced. Because the Government Investigations are part of a **Claim** that is deemed to have been first made during the 2016-2017 Policy Period, there is no coverage for the Government Investigations under the 2017-2018 Policies.

### THIRD AFFIRMATIVE DEFENSE

Under Armour's Counterclaim is barred or limited because the Derivative Matters are **Claims** that arise out of the same **Wrongful Acts** and/or **Interrelated Wrongful Acts** as the Securities Class Action, as well as those Derivative Demands issued during the 2016-2017 Policy Period. As a result, pursuant to Section III.C of the 2017-2018 Endurance Primary Policy's General Terms & Conditions, the Derivative Matters and the Securities Class Action are deemed to constitute one **Claim**, and such **Claim** is deemed to have been first made before March 31, 2017, no later than when the Securities Class Action was commenced. Because the Derivative Matters are part of a **Claim** that is deemed to have been first made during the 2016-2017 Policy Period, there is no coverage for the Derivative Matters under the 2017-2018 Policies.

### FOURTH AFFIRMATIVE DEFENSE

Coverage is not available for the matters referenced in the Counterclaim because the Specific Matter Exclusion (Endorsement No. 2) in the 2017-2018 Endurance Primary Policy, to which the QBE Excess Policy follows form, excludes coverage.

### FIFTH AFFIRMATIVE DEFENSE

Coverage is not available for the matters referenced in the Counterclaim because the Prior Notice Exclusion (Section III.A.1 of the 2017-2018 Endurance Primary Policy's D&O Coverage Section, as amended by Endorsement No. 4) in the 2017-2018 Endurance Primary Policy, to which

15

the QBE Excess Policy follows form, excludes coverage.

## SIXTH AFFIRMATIVE DEFENSE

QBE has no obligation to provide coverage for the matters asserted in the Counterclaims because they are not within the scope of the applicable Insuring Agreements of the QBE Excess Policy and/or the Endurance 2017-2018 Primary Policy, to which the QBE Excess Policy follows form.

## SEVENTH AFFIRMATIVE DEFENSE

The QBE Excess Policy, even if otherwise applicable, does not provide coverage for Loss, other than Defense Costs, based upon or arising out an Insured having gained any personal profit or remuneration to which such Insured was not legally entitled, or such Insured having committed any deliberate fraud or deliberate criminal act, if established by a final and non-appealable adjudication.

## EIGHTH AFFIRMATIVE DEFENSE

Coverage under the QBE Excess Policy, even if otherwise applicable, is limited to amounts that constitute "Loss" and/or "Defense Costs" as those terms are defined in the QBE Excess Policy and/or the Endurance 2017-2018 Primary Policy, to which the QBE Excess Policy follows form.

## NINTH AFFIRMATIVE DEFENSE

Coverage under the QBE Excess Policy, even if otherwise applicable, is limited to persons and entities who are Insureds, as that term is defined in the QBE Excess Policy and/or the Endurance 2017-2018 Primary Policy, to which the QBE Excess Policy follows form.

**TENTH AFFIRMATIVE DEFENSE**

Coverage under the QBE Excess Policy, even if otherwise applicable, is subject to the allocation provisions contained therein and/or in the Endurance 2017-2018 Primary Policy, which require allocation between covered and uncovered amounts.

**ELEVENTH AFFIRMATIVE DEFENSE**

Coverage under the QBE Excess Policy is barred, or may be barred, in whole or in part, to the extent that other insurance or indemnification exists for the amounts at issue.

**TWELFTH AFFIRMATIVE DEFENSE**

Coverage under the QBE Excess Policy is barred, or may be barred, by Under Armour's failure to exhaust the limits of the underlying insurance and/or satisfy the full amount of the Retentions based on covered Loss under the 2017-2018 Endurance Primary Policy.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Any coverage provided by the QBE Excess Policy is subject to the $10 million limit of liability.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Coverage for the matters asserted in the Counterclaim is barred, or may be barred, in whole or in part, by Under Armour's failure to perform the obligations, covenants, conditions precedent and/or conditions subsequent under the QBE Excess Policy and/or the Endurance 2017-2018 Primary Policy.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Under Armour's Counterclaims are barred, or may be barred, by the doctrine of estoppel, laches, waiver, acquiescence, ratification and/or unclean hands.

17

## **SIXTEENTH AFFIRMATIVE DEFENSE**

QBE hereby adopts and incorporates by reference any applicable Affirmative Defenses asserted by any Counterclaim-Defendant in response to Under Armour's Counterclaims and reserves the right to interpose any and all defenses available to it under the law that may be applicable to this action, as they become applicable or apparent or as they may be established during discovery and by evidence in this case. QBE reserves the right to amend this Answer to assert such additional defenses.

## **PRAYER FOR RELIEF**

WHEREFORE, QBE requests that the Court:

A. Deny Under Armour's prayer for relief;

B. Enter judgment against Under Armour and in favor of QBE;

C. Dismiss the Counterclaims with prejudice;

D. Award QBE its reasonable costs and expenses incurred in connection with the Counterclaims; and

E. Grant QBE such other and further relief as the Court may deem just and equitable.

Date:   March 2, 2023

Respectfully submitted,

CLYDE & CO US LLP

By: */s/ Gabriela Richeimer*
Gabriela Richeimer (Bar No. 15774)
Leslie S. Ahari (admitted *pro hac vice*)
Stacey E. Rufe (admitted *pro hac vice*)
1775 Pennsylvania Ave. NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 747-5100
Gabriela.Richeimer@clydeco.us
Leslie.Ahari@clydeco.us
Stacey.Rufe@clydeco.us

*Attorneys for Defendant QBE Insurance Corporation*

## CERTIFICATE OF SERVICE

I, Gabriela Richeimer, hereby certify that on this 2nd day of March 2022, I caused a true and correct copy of the foregoing to be served upon counsel of record by operation of the Court's Electronic Filing System pursuant to Local Rule CV-102.1(c).

By: */s/ Gabriela Richeimer*
Gabriela Richeimer (Bar No. 15774)
1775 Pennsylvania Ave. NW, 4th Floor
Washington, D.C. 20006
Telephone: (202) 747-5100
Gabriela.Richeimer@clydeco.us