**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ENDURANCE AMERICAN INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; FREEDOM SPECIALTY INSURANCE COMPANY; QBE INSURANCE CORPORATION; ARGONAUT INSURANCE COMPANY; XL SPECIALTY INSURANCE COMPANY; ALLIED WORLD NATIONAL ASSURANCE COMPANY; NAVIGATORS INSURANCE COMPANY,

Plaintiffs/Counterclaim-Defendants,

v.

UNDER ARMOUR, INC.,

Defendant/Counterclaim-Plaintiff.

Civil Action No.: 1:22-cv-02481-JMC

**REQUEST FOR HEARING**

**REDACTED PUBLIC VERSION**

**UNDER ARMOUR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 3

A. The Government Investigations and Claims Interrelated With Them Trigger the 2017-2018 Policy Tower ........................................................ 3

1. Endorsement 18 to the 2019-2021 Policies Is a Binding Subsequent Agreement that Clarifies or Modifies the Parties' Obligations Under the 2017-2018 Policies ............................................... 4

2. Endorsement 18 Deems the Government Investigations and Later Claims Interrelated With Them As Claims Made Under the 2017-2018 Policy Tower ........................................................................ 7

3. All of the Insurance Companies Have Taken or Endorsed the Position that the Government Investigations are Not the Same Claim as the Securities Class Actions .................................................... 11

B. The Insurance Companies Base Their Arguments on Policy Language that Was Superseded By Endorsements to the Policy ............................................... 12

C. The Government Investigations Trigger the 2017-2018 Policy Tower ............... 17

D. The Portions of the Consolidated Securities Class Actions that Result from the [REDACTED] in the Government Investigations Are Covered Under the 2017-2018 Policy Tower .................................................... 19

E. The Derivative Matters Contain Separate Claims From the Securities Class Actions ........................................................................................ 22

F. The Specific Matter Exclusion Does Not Bar Coverage .................................... 23

G. The Prior Notice Exclusion Is Not Applicable .................................................. 24

III. CONCLUSION .............................................................................................. 25

**CASES**

*ACE American Insurance Co. v. Ascend One Corp.*, 570 F. Supp. 789 (D. Md. 2008) ....18

*Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 824 A.2d 87 (2003) ....4, 5

*Beale v. American National Lawyers Insurance Reciprocal*, 379 Md. 643 843 A.2d 78 (2004) ....20

*Brown v. Emery Federal Credit Union*, 2022 WL 991387 (D. Md. March 31, 2022) ....14

*Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358 (1999) ....5

*Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240*, 788 F.3d 375 (4th Cir. 2015) ....15, 16

*Emmis Commc'ns Corp. v. Ill. Nat'l Ins. Co.*, 323 F. Supp. 3d 1012 (S.D. Ind. 2018) ....18

*Gateway Terry, LLC v. Prince George's County*, 268 A.3d 908 (Md. Ct. App. 2022) ....14

*Heist v. Eastern Sav. Bank, FSB*, 884 A.2d 1224 (Md. App. 2005) ....15, 24

*Home Insurance Co. of Illinois (New Hampshire) v. Spectrum Information Technologies, Inc.*, 930 F. Supp. 825 (E.D.N.Y. 1996) ....21

*Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94 25 A.3d 967 (2011) ....4

*Interstate Fire & Cas. Co. v. Dimensions Assur. Ltd.*, 843 F.3d 133 (4th Cir. 2016) ....9, 10

*Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 517 F. Supp. 3d 458 (D. Md. 2021) ....18

*Prince George's Cty. v. Local Gov't Ins. Tr.*, 879 A.2d 81 (Md. 2005) ....15

*Professional Solutions Ins. Co. v. Mohrlang*,
2009 WL 321706 (D. Colo. Feb. 10, 2009), *aff'd*, 363 Fed. Appx. 650 (10th Cir. 2010) ........................................19

*Sullins v. Allstate Ins. Co.*,
667 A.2d 617 (Md. 1995) ........................................8, 16

*United States v. Blankenship*,
846 F.3d 663 (4th Cir. 2017) ........................................14

*W.C. & A.N. Miller Development Co. v. Continental Casualty Co.*,
814 F.3d 171 (4th Cir. 2016) ........................................18

*Webster v. Glens Falls Insurance Co.*,
2003 WL 27384930 (D.N.M. Oct. 16, 2003)........................................15, 16

*White v. Parker*,
No. 2171, 2017 WL 727794 (Md. Ct. Spec. App. Feb. 24, 2017)........................................24

Defendant Under Armour, Inc. ("Under Armour" or "the Company") respectfully submits this memorandum of law in further support of its motion for judgment on the pleadings against the Amended Complaint filed by Plaintiffs Continental Casualty Company ("Continental"); Swiss Re Corporate Solutions America Insurance Corporation ("Swiss Re"); National Union Fire Insurance Company of Pittsburgh, PA ("National Union"); Freedom Specialty Insurance Company ("Freedom Specialty"); QBE Insurance Corporation ("QBE"); Argonaut Insurance Company ("Argonaut"); XL Specialty Insurance Company ("XL"); Allied World National Assurance Company ("Allied World"); and Navigators Insurance Company ("Navigators").[1]

## I. INTRODUCTION

Allegations as to Under Armour's use of [REDACTED] were first made against Under Armour in Government Investigations first brought during the 2017-2018 policy period of the claims-made policies at issue. Nevertheless, the insurance companies here seek to avoid coverage under the 2017-2018 policy by arguing that the allegations are interrelated with allegations made during the earlier 2016-2017 policy period, and so are covered only under the policies in those years. The insurance companies' efforts to avoid coverage on these grounds should be rejected.

As an initial matter, six out of nine of the remaining insurance company plaintiffs (XL, National Union, Freedom Specialty, QBE, Argonaut, and Navigators) already have resolved this issue in subsequent binding contracts, in which they agreed that the Government Investigations would be deemed made under the 2017-2018 policy year. The insurance companies' efforts to avoid the effects of these subsequent agreements disregard Maryland law on the ability of

[1] Counts VI and VII of the Amended Complaint were brought only by Endurance American Insurance Company, which has now settled with Under Armour, and so those Counts already have been dismissed. *See* Partial Stipulation of Dismissal with Prejudice [Dkt. 134].

contracting parties to clarify or modify prior contracts, and would render the language used by the parties in these agreements meaningless surplusage. Moreover, *all* of the insurance companies have taken the position that the Government Investigations are not the same Claim as the original Securities Class Actions.

Even apart from these binding agreements resolving the issue, the insurance companies' remaining arguments rely on incorrect policy language as to interrelatedness, which has been overridden by endorsements to the policies at issue. Applying the correct policy language and legal principles demonstrates that the Government Investigations are not the same Claim as the original Securities Class Actions and Sorensen and Luger derivative demands, which were made during the 2016-2017 policy year, but instead involved a separate Claim, first made during the 2017-2018 policy period. The Government Investigations addressed [REDACTED], while the original Securities Class Actions at the relevant time and the Sorensen and Luger demands were based on allegedly overly optimistic public statements by Under Armour officers about the Company's net revenue projections and growth rates.

Similarly, the later amendment of the Securities Class Actions to include allegations echoing those in the Government Investigations does not convert those separate Claims into the same Claim; Maryland law recognizes that a single underlying litigation can contain multiple separate Claims for insurance purposes. The current Consolidated Securities Class Actions contain both (a) allegations that result from the original class action allegations made against Under Armour, reported under the 2016-2017 policy period; and (b) allegations that result from the Government Investigations, added through amendments and consolidations after the

existence of the Government Investigations was revealed to the public in 2019. Thus, the Consolidated Securities Class Actions, as currently pleaded, include allegations related to two separate Claims, and that portion that results from the allegations in the Government Investigations is covered under the 2017-2018 policy period, when those allegations were first made.

Those portions of the Derivative Matters containing allegations that were not made until the 2017-2018 policy year also are a part of a separate Claim from the earlier noticed class action and derivative claims, and they also are covered under the 2017-2018 policy tower.

The insurance companies' reliance on the Specific Matter Exclusion and the Prior Notice Exclusions does not support their position, as neither exclusion by its terms applies to exclude the [REDACTED] first made during the 2017-2018 policy period.

As a result, Under Armour's motion for judgment on the pleadings should be granted.

## II. ARGUMENT

### A. The Government Investigations and Claims Interrelated With Them Trigger the 2017-2018 Policy Tower

Six of the remaining insurance companies from the 2017-2018 policy tower—XL, National Union, Freedom Specialty, QBE, Argonaut, and Navigators—also sold Under Armour insurance policies in the 2019-2021 policy tower. In those 2019-2021 policies, all six of these insurance companies followed form to an Endorsement 18 that expressly deemed claims interrelated with the Government Investigations as made during the 2017-2018 policy period. These insurance companies no longer have the right to assert that these claims instead should be treated as made under the 2016-2017 policy tower. Their arguments seeking to escape the effects of their binding agreements are contrary to Maryland law and the language of Endorsement 18. Moreover, *all* of the insurance companies have taken the position that the

Government Investigations are not the same Claim as the original Securities Class Actions.

***1. Endorsement 18 to the 2019-2021 Policies Is a Binding Subsequent Agreement that Clarifies or Modifies the Parties' Obligations Under the 2017-2018 Policies***

The insurance companies' efforts to argue that Endorsement 18 in the 2019-2021 policies cannot affect the obligations of the same parties under their 2017-2018 policies is flatly contrary to Maryland law. Maryland recognizes that a later contract can affect or modify a prior contract between the same parties: "It is ... well settled that an earlier agreement may be modified by a later one, by mutual consent." *Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 650, 824 A.2d 87, 99 (2003) (quoting *Thomas v. Hudson Motor Car Co.*, 226 Md. 456, 460, 174 A.2d 181, 183 (1961)). This is the case even if the earlier contract contains a clause that purports to limit modifications in some way: "Maryland courts have consistently reaffirmed that a party can modify or waive contractual provisions despite a provision purporting to limit those abilities," and this modification can take the form of "implication as well as by express agreement." *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 114, 118 25 A.3d 967, 979, 981 (2011). Thus, the insurance companies' reliance on the provision in the 2017-2018 policies limiting modifications to written endorsements to those policies (*see* Ins. Opp. at 39) does not avail them, as these policies also can be modified by a subsequent binding contract between the parties, as they were here.

The insurance companies seek to characterize the 2019-2021 policies as extrinsic evidence offered to vary the terms of the 2017-18 policy. *See, e.g.*, Ins. Opp. at 30-31. However, 2019-2021 policies are not extrinsic evidence; they are subsequent, binding contracts between the parties, that specifically reference the 2017-2018 policies and set out how certain claims are to be handled under those policies. The parole evidence rule barring extrinsic evidence to vary policy language applies only to *prior or contemporaneous* agreements: "Maryland law generally

requires giving legal effect to the clear terms of a contract and bars the admission of *prior or contemporaneous* agreements or negotiations to vary or contradict a written contractual term." *Calomiris v. Woods*, 353 Md. 425, 432–33, 727 A.2d 358, 361–62 (1999) (quoting *Equitable Trust Co. v. Imbesi*, 287 Md. 249, 271–72, 412 A.2d 96, 107 (1980)) (emphasis added). It is well settled, however, that there is no bar to the use of *later* agreements to modify an earlier agreement. *See, e.g.*, *Stinebaugh*, 374 Md. at 650, 824 A.2d at 99.

If the insurance companies were correct that a later contract cannot affect the obligations under an earlier one, no contract dispute could ever be settled, because settlements themselves are contracts. Indeed, as commentators have noted, in the field of insurance coverage law one of the "two basic approaches to structuring settlement agreements to resolve insurance coverage disputes" is a "coverage-in-place agreement" under which the parties resolve certain issues in dispute by later agreement as to how claims will be handled under previously issued policies:

> Under the second approach, known as a "coverage-in-place" agreement, the parties reach a specific understanding as to how the insurer will respond to and pay the claims at issue under its policies. This agreement may include a formula for calculating the insurer's share of losses, as well as protocols for claims handling. Most coverage-in-place agreements apply to future losses; frequently they also address a policyholder's past losses, whether under the same or a different formula.

Prenegotiation tasks—Identifying the basic objectives of settlement—Buy-Out vs. Coverage-in-Place Evaluation, 3 Law and Prac. of Ins. Coverage Litig. § 31:7; *see also* Types of environmental coverage settlement agreements—Coverage in place, 3 Envtl. Ins. Litig.: L. and Prac. § 22:27 (2023) (Under coverage-in-place agreements, "the insurer's duties are not terminated—instead, the coverage remains 'in place,' but the settlement agreement defines the extent of coverage: That is, the agreement describes the circumstances under which the insurer will provide future coverage under the policy(ies).")

The question of whether the Government Investigations should be treated as the same claim as previously noticed matters, and therefore triggering an earlier policy year, already had been raised by the time Endorsement 18 was issued.[2] Under the plain terms of the Endorsement, the parties resolved that issue between them, in favor of covering the Government Investigations and interrelated claims under the 2017-2018 tower of coverage. Such a subsequent agreement clarifying or modifying the obligations under the 2017-2018 tower of coverage for a specific set of claims is permissible under Maryland law, and indeed is common in resolution of insurance coverage disputes. The insurance companies' efforts to avoid the affects of the binding agreements they entered into should be rejected.

At the time the Endorsement was entered into, the insurance companies already had raised the question of whether the Government Investigations should be treated as made under the 2017-2018 policy tower, or as interrelated with the original *Breece* action and so made under the 2016-2017 policy tower. The Endorsement, by acknowledging the notification of the Government Investigations under the 2017-2018 policy tower, and by deeming any subsequent claims that are interrelated with the Government Investigations as made under that same policy tower, clearly was intended to resolve that question. There is no mention anywhere in the Endorsement that the insurance companies are reserving any rights to assert that these claims were made in any other year besides the 2017-2018 policy tower.

Nor are the insurance companies assisted by their arguments that exclusions cannot create coverage, only limit it. The insurance companies rely on the subtitle of Endorsement 18 as a

[2] *See, e.g.*, March 30, 2018 Letter from Carla Caliendo to Susan Hiteshew, Ex. T to the Original Complaint at 4 (Endurance agrees to advance defense costs under 2017-2018 policy, but reserves the right to assert that the Government Investigations are interrelated with the earlier noticed *Breece* action and so trigger an earlier policy period.)

Specific Investigation Exclusion to argue that the Endorsement must contain solely exclusionary language. However, the Endorsement itself states that "[t]he title and any headings in this endorsement are solely for convenience and do not affect its meaning." Furthermore, the insurance companies' arguments ignore the plain language of the relevant section of the Endorsement, which describes how certain claims shall be deemed made under the 2017-2018 policy tower. Specifically, the section of Endorsement 18 that addresses the policy years under which certain claims shall be deemed to have been made is not an exclusion; it provides guidance as to how certain claims shall be handled, if they are excluded by the earlier paragraphs of the Endorsement. Indeed, the paragraph providing that guidance by its terms applies only if the claims already have been excluded by the earlier portions of the Endorsement, and so cannot serve as an exclusion itself (since any claims it affects already have been excluded).

***2. Endorsement 18 Deems the Government Investigations and Later Claims Interrelated With Them As Claims Made Under the 2017-2018 Policy Tower***

The insurance companies are also incorrect in their proposed reading of Endorsement 18 to the 2019-2021 policies. The express language of that provision states that the Government Investigations and claims interrelated with them are to be treated as made under the 2017-2018 policies, rather than under the 2016-2017 policies as the insurance companies are arguing in this litigation. The alternative interpretation of the Endorsement by the insurance companies disregards that language, and indeed treats a large part of the Endorsement as meaningless surplusage, contrary to Maryland law.

The insurance companies incorrectly argue that Endorsement 18 should not be read as resolving the question of which policy year applies to the Government Investigations and interrelated allegations, on the grounds that the Endorsement deems the claims "made" during the 2017-2018 policy year, rather than specifying they are deemed "first made" under that tower.

Ins. Opp. at 34. A reasonable policyholder, however, would certainly understand a provision addressing a series of claims-made policies, that deems certain claims as "made" under particular policy years, to be addressing the question of which policy year responds to those claims.[3] The insurance companies provide no explanation as to why the parties would have drafted a lengthy provision about how these claims are deemed to have been "made" under the 2017-2018 policy tower, if the intent of the language was not to have the policies in that tower respond. If the insurance companies had wished to reserve the right to argue that some different policy tower responded to those losses deemed "made" during the 2017-2018 policy tower, such as the 2016-2017 policy tower, they easily could have included language to that effect, but did not.

The insurance companies also argue that the [REDACTED] and Wells Notices that were issued during the 2019-2021 policy period should not be deemed by the Endorsement to have been made during the 2017-2018 policy period on the grounds that they are part of the Government Investigations and not "new" Claims. Ins. Opp. at 37-38. This overlooks the policy language defining a Claim as including not only Formal Investigations, but also, for example, any "written demand for monetary damages or other relief against any Insured *for a Wrongful Act*, commenced by the Insured's receipt of such demand. . ." Ex. N to original Complaint [Dkt. 1], Endurance 2017 - 2018 Policy at 2 (emphasis added). This broad language certainly can encompass [REDACTED] and Wells Notices. In addition, the exclusionary language of Endorsement 18 expressly extends to "[REDACTED] Wells Notice(s) and/or enforcement proceeding(s) resulting" from the Government Investigations, and so the second part of Endorsement 18, deeming any such subsequent claims excluded by the first part

[3] Insurance policy language is construed as a reasonably prudent layperson would understand it, and any ambiguities or uncertainties in the language are construed in favor of coverage. *See, e.g.*, *Sullins v. Allstate Ins. Co*., 667 A.2d 617, 619 (Md. 1995).

as made during the 2017-2018 policy tower, must be read as applying to those as well.

Under Armour's opening memorandum already rebutted the insurance companies' argument that claims deemed by Endorsement 18 to have been made under the 2017-2018 policy tower then can be deemed to have been made in another policy year by application of the language of the 2017-2018 policies. *See* Under Armour Opening Br. at 10-11. The insurance companies' argument ignores both the meaning of the word "deemed," and also renders the entire second part of Endorsement 18 (beginning "It is further agreed and understood. . . ") meaningless surplusage, contrary to Maryland law.[4] The only way to give effect to all the language used by the parties in the 2017-2018 policy and the 2019-2021 policies is to (a) deem the Government Investigations and interrelated claims as made under the 2017-2018 policy tower, and (b) then apply the remaining language of that tower to those claims.

In fact, the insurance companies' entire argument about this Endorsement runs afoul of the rule that each provision in a contract must be given effect, with none treated as meaningless surplusage. The interpretation that the insurance companies offer for Endorsement 18 is that "the Specific Investigation Exclusion operates only to exclude the Government Investigations from coverage under the 19-21 Policies." Ins. Opp. at 36. This interpretation renders the entire second part of the Endorsement as meaningless surplusage, contrary to Maryland law. The Government Investigations already are expressly excluded from the 2019-2021 policies under the first paragraph of Endorsement 18. In fact, the second part of the Endorsement expressly applies only to claims that already are excluded under the exclusionary language of the first paragraph. If, as the insurance companies assert, Endorsement 18 addresses coverage only under

[4] Under Maryland law, contracts must be read to give each provision meaning, and to avoid rendering any provision meaningless surplusage. *See, e.g., Interstate Fire & Cas. Co. v. Dimensions Assur. Ltd.*, 843 F.3d 133, 137 (4th Cir. 2016).

the 2019-2021 policies and has no effect on the 2017-2018 policies that are specifically referenced in that Endorsement, then the language in the second part of the Endorsement about how claims already excluded under the 2019-2021 policies are to be treated has no purpose, no meaning, and no effect on anything. Similarly, if the Claims interrelated with the Government Investigations that the Endorsement "deems" as made under the 2017-2018 policy tower can then treated as made under an earlier tower by the language of the 2017-2018 policies, then that provision of the Endorsement has no effect, because in absence of the second part of the Endorsement the same result would obtain (that is, the language of the 2017-2018 policies would determine whether claims are treated as made under that tower).

It would be absurd to conclude that the parties drafted the detailed provision that makes up the second part of the Endorsement, addressing how claims interrelated with the Government Investigations are to be deemed as Claims made under the 2017-2018 policy tower, but intended that provision to have no force or effect. Notably, other similar Specific Matter exclusions in the policies do not contain similar additional language deeming the certain claims as made under certain policy years, so there must be some purpose for which it was included in Endorsement 18. *See, e.g.*, Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, End. 2. Maryland law requires the language the parties chose to include to be treated as having some purpose and effect. *See, e.g.*, *Interstate Fire*, 843 F.3d at 137. As a result, the obvious intent and effect of the language must be enforced: the language resolves the question, which at that time had been raised by the insurance companies, as to which year of coverage responds to the Government Investigation and the claims interrelated to them.

Thus, by agreement of the parties, the Government Investigations, as well as those portions of the Consolidated Securities Class Actions and Derivative Demands that involve the

[redacted] that first appeared in the Government Investigations, are deemed to be a Claim made under the 2017-2018 policy tower. XL, National Union, Freedom Specialty, QBE, Argonaut, and Navigators should not be permitted to avoid their binding agreement to this effect.

### *3. All of the Insurance Companies Have Taken or Endorsed the Position that the Government Investigations are Not the Same Claim as the Securities Class Actions*

In addition to the express agreement by six of the remaining insurance companies to treat the Government Investigations and the claims interrelated with them as made under the 2017-2018 policy tower, *all* of the insurance companies have taken the position that the Government Investigations are a different Claim from the original Securities Class Actions. The insurance companies spend two pages of their brief putting forth convoluted arguments that the Government Investigations can both be the same Claim, and not the same Claim, as the original Securities Class action, depending on which result suits their interests. Ins. Opp. at 32-33. The simple fact is that either the Government Investigations are either the same Claim as the original Securities Class Actions or they are not. If they are the same Claim, then they are both a Securities Claim, because it is undisputed that the original Securities Class Action was a Securities Claim. By taking the position that the Government Investigations do not qualify as a Securities Claim, each of the insurance companies admitted that the Government Investigations are not the same Claim as the Securities Class Actions.

Each of the Counts brought by the remaining insurance companies is based on the incorrect assertion that the Government Investigations, and the portions of the Consolidated Securities Class Actions and Derivative Matters that incorporate the allegations from the Government Investigations, are the same Claim as the original Securities Class Action, which was made under the 2016-2017 policy period. Because six of the remaining insurance companies have agreed by contract that the Government Investigations and interrelated claims

instead are covered under the 2017-2018 policy year, and all have taken the position that the Government Investigations are not the same Claim as the original Securities Class Actions, the Amended Complaint should be dismissed.

### B. The Insurance Companies Base Their Arguments on Policy Language that Was Superseded By Endorsements to the Policy

The insurance companies' entire argument also fails because it is based on the application of incorrect policy language. The insurance companies' argument for the interrelatedness of the various underlying actions is based on language that was superseded by narrower interrelatedness language in an endorsement added to the policies. Under the relevant language, the insurance companies are not entitled to exclude coverage for the Government Investigations and later claims interrelated with them on the purported grounds that the investigations are related to the earlier-reported original Securities Class Actions and derivative matters, unless they can show that the allegations in the Government Investigations completely overlap with the key allegations in the original *Breece* complaint.

The insurance companies incorrectly assert that two claims must be found to be interrelated "*so long as even a single fact, circumstance, situation, transaction or event* logically or causally connects" the two. Ins. Opp. at 9 (quoting *W.C. & A.N. Miller Development Co.,* 2014 WL 5812316, at *7 (D. Md. Nov. 7, 2014), *aff'd* 814 F.3d 171 (4th Cir. 2016)) (emphasis supplied by Plaintiffs). The insurance companies base this argument on a definition of "Interrelated Wrongful Acts" that does not apply here because it was superseded by narrower language the parties added to the policies by endorsement. Ins. Opp. at 6. The insurance companies assert that the relevant definition of "Interrelated Wrongful Acts" is "all Wrongful Acts that have as a common nexus *any* fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes." Ins.

Opp. at 6 (emphasis added). This definition was superseded by endorsements added to the policy, and the actually applicable policy language does not support the insurance companies' "single fact" test for interrelatedness. Rather, the insurance companies must show complete overlap between the key allegations in two claims in order for them to be treated as a single Claim under the relevant policy language.

Endorsement 2 to the 2017-2018 Endurance Policy is a "Specific Matter" Endorsement addressing the standards for determining whether a new Claim should be treated as arising out of Interrelated Wrongful Acts with the earlier noticed actions (specifically listing the notice of the original complaint in the *Breece* Action, as well as the Sorensen and Luger derivative matters), and so excluded from coverage. The Specific Matter Endorsement excludes only "that portion of Loss on account of any Claim resulting from" the same Wrongful Act or an Interrelated Wrongful Act to that alleged in the enumerated Claims. Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, End. 2 (followed from to by each remaining plaintiff).

The Specific Matter Endorsement also amends the definition of Interrelated Wrongful Acts, stating that it "is agreed" that:

> Interrelated Wrongful Acts means the Wrongful Acts that have as a common nexus the fact, circumstance, situation, event, transaction or series of causally connected facts, circumstances, situations, events or transactions.

Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, End. 2. This represents a significant narrowing of the Interrelated Wrongful Acts definition from the definition in the body of the Endurance Policy that the insurance companies rely on in their brief, which treats as interrelated "*all* Wrongful Acts that have as a common nexus *any* fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes." Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, at

General Terms and Conditions, p. 4 (emphasis added). Under the amended definition, a Claim is no longer treated as arising out of Interrelated Wrongful Acts merely because it shares "any" fact or circumstance with the Wrongful Acts alleged in another Claim; rather, the definition applies only to "the" particular facts and circumstances shared between the Claims.

"[T]he definite article 'the' particularizes the subject which it precedes and is a word of limitation." *United States v. Blankenship*, 846 F.3d 663, 678 (4th Cir. 2017) (internal quotation omitted); *see also Gateway Terry, LLC v. Prince George's County*, 268 A.3d 908, 915 (Md. Ct. App. 2022). In *Brown v. Emery Federal Credit Union*, 2022 WL 991387, at *6 (D. Md. March 31, 2022), for example, the Court held that the use of definite article "the" in a forum selection clause requiring litigation "in the county in which the Credit Union is located" supported reading the clause as referring only to the main location of the Credit Union, that is, its principal place of business, and not to any branch location. Similarly, by altering the language from requiring that there be common nexus of "any" fact or circumstance to "the" fact or circumstance, the parties indicated a limited focus on the main facts, not simply "any" fact shared by the two claims. Under the correct policy language, the insurance companies purported "single fact" standard for finding interrelatedness finds no support and must be rejected.

The 2017-2018 policy language also provides that when there is only some, but not complete, overlap between the listed prior Claims and the Claims made during the Policy Period, the new Claims will not be excluded in their entirety. The Specific Matter Endorsement, which specifically addresses how the Endurance Policy will respond when there is overlap between a new Claim and the original Securities Class Action and Sorensen and Luger derivative matters, states that it excludes only: "*that portion of Loss* on account of any Claim resulting from any litigation, claim, proceeding, event, or other matter described below, or any Wrongful Act or

Interrelated Wrongful Act alleged therein." Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, End. 2 (emphasis added).

The 2017-2018 policies also extend coverage for Defense Costs to 100% of the costs of defending a Claim that alleges both covered and non-covered matters.[5] Thus, if *any portion* of the Government Investigations does not result from such excluded Interrelated Wrongful Acts, there is full coverage for the Defense Costs under the 2017-2018 policy tower.

Having agreed to an Endorsement[6] to the policy language specifically addressing the relatedness question[7] in this exact context, the insurance companies cannot now seek to instead apply the standards set out in the more general clauses when the language of the Specific Matter Endorsement calls for treatment of the Claims as separate here.

Nevertheless, even if this Court were to look to the general Single Claim provision rather than the Specific Matter Endorsement, the Single Claim provision also fails to support the insurance companies' position. The applicable "Single Claim" provision provides that:

> All Claims and Inquiries that arise out of the same fact, circumstance, situation, event, or Wrongful Act, or facts, circumstances, situations, events, or Wrongful Acts that are logically or causally related shall be deemed one Claim, which shall be deemed to be first made on the earliest that the first of any

---

[5] *See* Ex. N to original Complaint [Dkt. 1], Endurance Policy, General Terms and Conditions form, at 8 (emphasis added), followed form to by all of the insurance company plaintiffs.

[6] "If the endorsement conflicts with the main policy, the endorsement controls." *Prince George's Cty. v. Local Gov't Ins. Tr.*, 879 A.2d 81 (Md. 2005); *see also Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240*, 788 F.3d 375, 379 (4th Cir. 2015). *Accord Webster v. Glens Falls Insurance Co.*, 2003 WL 27384930, at *5-*6 (D.N.M. Oct. 16, 2003) ("It is not necessary that the endorsement state specifically that its listed exclusions are meant to replace those of the main policy, if an opposite conclusion would cause an illogical result and violate the insureds' reasonable expectations.").

[7] "Where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it." *Heist v. Eastern Sav. Bank, FSB*, 884 A.2d 1224, 1228 (Md. App. 2005) (internal quotation omitted).

such Claims is made. . .

Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, Endorsement 4, ¶ E (followed form to by each of the insurance company plaintiffs). Significantly, the Single Claim provision also was amended by endorsement to remove any reference to the original definition the insurance companies rely on, with its language deeming interrelated Wrongful Acts that share "any" facts or circumstances; the amended Single Claim provision applies only to "the" particular facts and circumstances shared between the Claims.

The insurance companies, however, continue to rely on the Single Claim provision that appeared in the body of the policy, rather than the provision as amended by Endorsement 4. *See, e.g.*, Ins. Opp. at 6. In doing so, the insurance companies disregard the rule that language in insurance policy endorsements replaces inconsistent provisions in the body of the policy. *Cap. City Real Est., LLC*, 788 F.3d at 379. This is the case even if the endorsement does not expressly state its language replaces the inconsistent language from the body of the policy. *See, e.g., Webster*, 2003 WL 27384930, at *5-*6.

At best for the insurance companies, the policy and its endorsements set out multiple provisions with different tests of interrelatedness. (Even the insurance companies' brief quotes two inconsistent provisions on this subject. *See* Ins. Opp. at 6.) The insurance companies seem to assume they can pick and choose the broadest provision, most unfavorable to coverage, and apply it here. This multiplicity of inconsistent interrelatedness provisions, however, means that the policy is ambiguous as to which applies in this situation, and such ambiguity must be construed in favor of coverage. *See, e.g., Sullins*, 667 A.2d at 619.

Under the standard set out in the Specific Matter Endorsement or the correct Single Claim provision, the insurance companies must show the facts making up the Wrongful Acts in the different Claims overlap completely in order to avoid full coverage for the Government

Investigations, and the later claims resulting from those investigations, under the 2017-2018 policy period. As discussed below, the insurance companies do not come close to meeting that standard here.

## C. The Government Investigations Trigger the 2017-2018 Policy Tower

Try as they might to argue that the Government Investigations constitute the same Claim as the prior Claims reported under the 2016-2017 policy period, the insurance companies cannot escape the fact that the Government Investigations focused on [REDACTED] [REDACTED], issues that nowhere appeared in any class action or derivative demand that was filed or made during the 2016-2017 policy period. Rather, the Securities Class Actions at that time were based on allegations of false and overly optimistic public statements about the Company's net revenue projections and growth rates, and allegedly misleading statements regarding inventory growth, discounting, and margin decline. In addition to addressing different conduct, the Government Investigations and Securities Class Actions addressed different time periods and sought different relief. *See* Under Armour's Opening Br. at 20-22.

Thus, the Government Investigations arose out of numerous alleged "fact[s], circumstance[s], situation[s], event[s], [or] transaction[s]" that nowhere appeared in the original Securities Class Actions and derivative demands that were made and reported during the 2016-2017 policy period. The Government Investigations and the later claims interrelated with them cannot be treated as the same Claim as those earlier actions, particularly under the proper, narrow policy language, which requires that the Claims share the same main facts, and not just any facts, in order to be considered the same Claim, and only "that portion" of the later Claim resulting from such shared allegations is excluded from coverage under the later policy.

The insurance companies try to bolster their argument by asserting that the use of [REDACTED] [REDACTED] and allegedly misleading public statements were part of some "common scheme" or

shared the same motive, and so should be treated as a single claim. This argument fails. *ACE American Insurance Co. v. Ascend One Corp.*, 570 F. Supp. 789, 798-801 (D. Md. 2008), demonstrates that under Maryland law, a common motive is not sufficient to establish Claims arise out of Interrelated Wrongful Acts, as each instance of that policyholder's abusive credit counselling scheme presumably involved the same motive. Similarly, in *Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 517 F. Supp. 3d 458 (D. Md. 2021), this Court held that two actions alleging antitrust violations involving different methods of anticompetitive conduct did not allege Related Wrongful Acts and so would not be treated as a single claim, even when they contained "overlapping allegations might arguably appear to be part of a common modus operandi." *Id.* at 463 (quoting *Ascend One*, 570 F. Supp. 2d at 801). By contrast, the case on which the insurance companies rely for their "common scheme" argument, *W.C. & A.N. Miller Development Co. v. Continental Casualty Co.*, 814 F.3d 171, 175 - 177 (4th Cir. 2016), involved both the broader interrelatedness language, and conduct far more interrelated than the underlying allegations here; specifically two litigations in which were serial efforts by the same claimant to collect the same fee owed by the policyholder.

As another court put it, "having a goal. . . [is] not a 'wrongful act,'" and different acts "do not share operative facts such that they are reasonably considered 'the same or related' simply because they may have been taken with the same goal in mind." *Emmis Commc'ns Corp. v. Ill. Nat'l Ins. Co.*, 323 F. Supp. 3d 1012, 1028 (S.D. Ind. 2018). Thus, the insurance companies' assertion that the underlying actions involve interrelated Wrongful Acts on the grounds that they allege the same "scheme" must be rejected.

The allegations of misleading public statements and [REDACTED] cannot be said to be "causally connected" (as required by the Specific Matter Endorsement) or "logically or causally

related" (as required by the Single Claim provision) with the allegations in the original Securities Class Actions or Sorensen or Luger derivative demands. "[T]wo or more things are 'logically connected' if 'connected by an inevitable or predictable interrelation or sequence of events'" and "are 'causally connected' if 'one person or thing brings about the other.'" Allan D. Windt, 3 Insurance Claims and Disputes § 11:22D (6th ed. March 2022 Update). The causation must be in "a direct and traceable way, and where no independent, significant thing interrupts the causal chain between the two."[8] There is no such direct, uninterrupted causal connection between allegations of misleading public statements and [REDACTED]. Nor were the alleged misleading public statements connected to the alleged [REDACTED] by an "inevitable or predictable interrelation or sequence of events"; they were separate acts, each separately alleged to be a Wrongful Act during the relevant time.

The Government Investigations thus are a separate Claim from the earlier reported Securities Class action, and trigger the 2017-2018 policy year. As a result, Count II of the Amended Complaint should be dismissed.

**D. The Portions of the Consolidated Securities Class Actions that Result from the [REDACTED] [REDACTED] in the Government Investigations Are Covered Under the 2017-2018 Policy Tower**

As discussed above, under the relevant policy language (and the express contractual agreement of the majority of the insurance companies), the [REDACTED] allegations first made in the Government Investigations during the 2017-2018 policy period constitute a separate Claim from the allegations as to misleading public statements first made during the 2016-2017 policy period in the original Securities Class Actions. The fact that the [REDACTED] allegations were

[8] *Professional Solutions Ins. Co. v. Mohrlang*, 2009 WL 321706, at *11 (D. Colo. Feb. 10, 2009), *aff'd*, 363 Fed. Appx. 650 (10th Cir. 2010).

later added to the Consolidated Securities Class Actions, after the Government Investigations were publicly disclosed, does not alter this; it simply means that the Consolidated Securities Class Actions now contain multiple Claims, triggering separate policy years.

Once again advancing an argument directly contrary to binding Maryland law and the applicable policy language, the insurance companies assert that by virtue of now being alleged in the same litigation, the [redacted] allegations and the allegations as to misleading public statements must be treated as a single Claim. Maryland's highest court, however, has rejected this argument. *Beale v. American National Lawyers Insurance Reciprocal*, 379 Md. 643, 649 843 A.2d 78, 82 (2004). In *Beale*, the Court held that held that a single lawsuit involving malpractice allegations against an attorney by six siblings constituted six separate Claims for purposes of insurance coverage. *Id.*

The insurance companies argue that the policy language in *Beale* differed from the policy language here, characterizing it as defining "'claim' more broadly to mean a demand, *including* a lawsuit among other things." Ins. Opp. at 13. The problem for the insurance companies is that the policy language here *also* defines Claim to include both demands, lawsuits, and other things.[9] An amended complaint alleging new wrongful acts is certainly a "a written demand for monetary damages or other relief against any Insured for a Wrongful Act," and so it constitutes a Claim under the policy language. Thus, *Beale* controls here, and the mere addition of separate Claims into the same consolidated litigation does not render them the same Claim for insurance coverage

[9] The policies define "Claim" to include, among several other things, "a written demand for monetary damages or other relief, including, but not limited to, a demand for injunctive relief, against any Insured for a Wrongful Act, commenced by the Insured's receipt of such demand," and "a civil proceeding against any Insured for a Wrongful Act, commenced by the service of a complaint or similar pleading." Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, End. 4, page 9.

purposes. Rather, as in *Home Insurance Co. of Illinois (New Hampshire) v. Spectrum Information Technologies, Inc.*, 930 F. Supp. 825, 845-47 (E.D.N.Y. 1996), class action allegations that grow by accretion, adding additional allegations, can involve multiple Claims and trigger multiple towers of directors and officers insurance coverage.

The insurance companies' position is also inconsistent with the policy language, in which a "Claim" is defined as to specific Wrongful Acts, for example, including: "a written demand for monetary damages or other relief against any Insured *for a Wrongful Act*, commenced by the Insured's receipt of such demand. . ." and "a civil proceeding against any Insured *for a Wrongful Act*, commenced by the Insured's receipt of a complaint or similar pleading. . ." Ex. N to original Complaint [Dkt. 1], Endurance 2017 - 2018 Policy at 2 (emphasis added). If a policyholder receives an amended complaint, adding allegations as to a *different* Wrongful Act, there is no basis in this definition to treat the new allegations automatically as part of the same Claim as the Wrongful Acts alleged in the original complaint. In addition, the policies at issue have both Allocation clauses addressing coverage for mixed claims containing both covered and uncovered matters, as well as Other Insurance clauses addressing the situation when more than one policy applies to cover the same Loss.[10] Thus, the policies clearly contemplate there may be situations where only part of a lawsuit triggers a particular policy, or where a single lawsuit triggers more than one policy. The fact that the separate Wrongful Acts alleged in the Government Investigations and the original Securities Class Actions were later grafted together into a single consolidated set of actions does not render them interrelated when they do not meet the standards set forth in the Specific Matter Endorsement or Single Claim provision.

[10] *See* Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, General Terms and Conditions form at 8, 11; Ex. L to original Complaint [Dkt. 1], 2016-2017 Continental Casualty Policy, Management Liability Solutions form at 8, 10.

Thus, the portions of the Consolidated Securities Class Actions containing allegations as to [REDACTED] constitute a separate Claim from allegations in the original Securities Class Actions, and trigger coverage under the 2017-2018 policy year. As a result, Count I of the Amended Complaint should be dismissed.

**E. The Derivative Matters Contain Separate Claims From the Securities Class Actions**

The insurance companies seek to have this Court treat all of the allegations in all of the Derivative Matters as interrelated with the Claims first made in the 2016-2017 policy period. This ignores the different Claims alleged in the various Derivative Matters.

The insurance companies, for example, provide no facts, other than a conclusory statement, suggesting that there is any relation between the Derivative Matters based on allegations first made during the 2016-2017 policy period of misleading public statements affecting Under Armour's stock price, and the Derivative Matters based on allegations first made during the 2017-2018 policy period of self-dealing by former Under Armour CEO Kevin Plank in connection with the use of an entity called Sagamore Development Holdings LLC in 2014 to purchase land in Baltimore's Port Covington area. In addition, the insurance company's assertion that any Loss from the Sagamore allegations would be beneath the retention of the policy overlooks that retention for derivative demand investigation costs is $0. *See* Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, Declarations Item 9.

The Derivative Matters also include a number of additional Derivative Matters, brought by Olin, Cordell, Smith, Klein, Salo, and Viskovich, that the insurance companies admit (i) were not brought until "[a]fter publication of the *Wall Street Journal* report in November 2019 regarding the Government Investigations" and (ii) "include allegations regarding the [REDACTED] [REDACTED] that are the subject of the Government Investigations." Amended Complaint ¶ 44. As discussed above, the allegations that are the subject of the

Government Investigations are a separate Claim from the earlier allegations of allegedly misleading public statements and were first made during the 2017-2018 policy period. Thus, the portions of these Derivative Matters containing allegations interrelated with the allegations first made in the Government Investigations are covered under the 2017-2018 policies.

As a result, Count III of the Amended Complaint, seeking a declaration of no coverage for all of the allegations in all of the Derivative Matters, should be dismissed.

**F. The Specific Matter Exclusion Does Not Bar Coverage**

The insurance companies' reliance on the "Specific Matter Exclusion" in the 2017-2018 policies as barring coverage here also is misplaced. That exclusion bars coverage only for "for that portion of Loss on account of any Claim resulting from any" of several specific matters listed within the exclusion, or any Wrongful Act interrelated with the Wrongful Acts alleged in those specific matters. Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, End. 2.[11] The specific matters listed include the notice of the original *Breece* complaint, and the earliest Derivative Matters, which were reported during the 2016-2017 policy period.

None of those specific listed matters contained any allegations as to [REDACTED] [REDACTED]; rather these allegations these first appeared in the Government Investigations, which was a Claim first made during the 2017-2018 policy period. Thus, no "portion of Loss" in connection with the Government Investigations "result[ed] from" any of the matters listed within the exclusion. And as discussed above and in Under Armour's Opening Memorandum, the Wrongful Acts alleged in those matters was not interrelated with the

[11] The Specific Matter Exclusion endorsement in the 2017-2018 policies contains the narrower language defining Interrelated Wrongful Acts as: "Wrongful Acts that have as a common nexus the fact, circumstance, situation, event, transaction or series of causally connected facts, circumstances, situations, events or transactions." *Id.*

allegations in the Government Investigations. Similarly, the addition of the [redacted] to the Consolidated Securities Class Actions and the later Derivative Matters "result[ed] from"[12] the Government Investigations and their public disclosure in November 2019, and therefore that portion of the Loss in connection with the Consolidated Securities Class Actions and the Derivative Matters are not excluded by the Specific Matter Exclusion.

As a result, the Specific Matter Exclusion does not bar coverage here, and Count IV of the Amended Complaint should be dismissed.

### G. The Prior Notice Exclusion Is Not Applicable

The insurance companies also argue that the Prior Notice Exclusion in the 2017-2018 Endurance Policy excludes coverage for the underlying actions. Ins. Opp. at 28-30. As an initial matter, the Specific Matter Endorsement is the specific provision added by endorsement to the 2017 - 2018 policy language to address the effect on coverage for later Claims of the items noticed prior to that policy period. As such, the Specific Matter Endorsement, and not the Prior Notice provision, controls the effect on later Claims of the earlier notices of the *Breece* complaint and the Sorensen and Luger derivative matters, *see, e.g.*, *Heist*, 884 A.2d at 1228, and as discussed above, the Specific Matter Exclusion does not preclude coverage for the Government Investigations, or those portions of the Consolidated Securities Class Actions and Derivative Matters that result from the allegations in the Government Investigations.

The insurance companies' arguments also are based on the faulty premise that the addition of allegations about pull forwards and related alleged accounting issues into the Third Amended Complaint in the Securities Class Actions rendered these allegations to be part of the

---

[12] "[A] phrase such as 'results from' imposes a requirement of but-for causation." *White v. Parker*, No. 2171, 2017 WL 727794, at *9 (Md. Ct. Spec. App. Feb. 24, 2017).

same Claim as the allegations in the original Securities Class Action and early derivative claims. [REDACTED] these two sets of allegations constitute separate Claims under the policy language and relevant law, and the fact that they were later consolidated together into the same litigation does not convert them into a single Claim. None of the subjects of notice during the 2016-2017 policy period—neither the *Breece* Complaint, nor the Sorensen or Luger Derivative Matters—involved any allegations as to pull forwards or related alleged accounting issues.

In addition, the version of the "Prior Notice Exclusion" in the policies at issue, by its terms, only applies to notices that were "accepted by the insurer of such [earlier] policy as notice of circumstances," and so does not apply to notices that were accepted as notices of *claims*. *See* Ex. N to original Complaint [Dkt. 1], 2017-2018 Endurance Policy, Directors and Officers Liability Coverage Section, at p. 4. The insurance companies do not identify any prior notice that was accepted as a notice of circumstance, rather than a notice of claims. The insurance companies therefore have not met their burden to show that the "Prior Notice Exclusion" applies to bar coverage here, and so Count V of the Amended Complaint should be dismissed.

## III. CONCLUSION

For the reasons set forth above, and in Under Armour's opening memorandum, Under Armour's motion for judgment on the pleadings should be granted in its entirely.

Dated: July 27, 2023

By: */s/ Michael T. Sharkey*

Michael T. Sharkey, Bar No. 23275
MSharkey@perkinscoie.com
Jonathan G. Hardin, *Admitted pro hac vice*
JHardin@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

Mattison Kim, *Admitted pro hac vice*
MKim@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400,
Chicago, IL 60606-1511
Telephone: +1.312.324.8400
Facsimile: +1.312.324.9400

*Attorneys for Defendant Under Armour, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2023 all counsel of record were served with a copy of this document "Filed Under Seal" via electronic mail.

*/s/ Michael T. Sharkey*