# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ENDURANCE AM. INS. CO. *et al.*,   *

  *Plaintiffs/Counterclaim Defendants*,  *

  v.         *  Civil Action No. RDB-22-2481

UNDER ARMOUR, INC.,     *

  *Defendant/Counterclaim Plaintiff.* *  **REFILED WITH REDACTIONS**

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case involves cross-motions for declaratory judgment with respect to insurance coverage for the Defendant/Counterclaim Plaintiff Under Armour, Inc.[1] ("Defendant/Counterclaim Plaintiff," "Under Armour," or the "Insured"). Specifically, this insurance coverage dispute stems from a consolidated securities class action, several derivative matters, and government investigations (the "Underlying Matters") against Under Armour. The lead insurance company, Endurance American Insurance Company ("Endurance") and Under Armour have reached an agreement and there is no longer any dispute between those two parties with respect to insurance coverage during relevant time periods.[2] (ECF No. 134.)[3]

---

[1] The docket incorrectly indicates that Under Armour, Inc. was terminated on May 18, 2023. In the separate Order that follows, the Court instructs the Clerk of Court to UPDATE the docket accordingly.

[2] On May 18, 2023, this Court entered an Order dismissing with prejudice all claims and defenses asserted by and between Endurance and Under Armour pursuant to Endurance and Under Armour's partial stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (ECF No. 134.) In the separate Order that follows, the Court instructs the Clerk of Court to UPDATE the docket to reflect that Endurance was terminated on May 18, 2023; and ALTER the case caption to remove Endurance such that the caption reads *Navigators Ins. Co. et al. v. Under Armour, Inc.*

[3] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

The precise issue in this case remains the insurance coverage of Under Armour's excess policy insurers, specifically Plaintiffs/Counterclaim Defendants Continental Casualty Company ("Continental"), Swiss Re Corporate Solutions America Insurance Corporation ("SRCSAIC"), National Union Fire Insurance Company of Pittsburg, PA ("National Union"), Freedom Specialty Insurance Company ("Freedom"), QBE Insurance Corporation ("QBE"), Argonaut Insurance Company ("Argonaut"), XL Specialty Insurance Company ("XL"), Allied World National Assurance Company ("Allied World"), and Navigators Insurance Company ("Navigators") (collectively, "Plaintiffs/Counterclaim Defendants" or the "Insurers"). (ECF No. 29 *SEALED*.)  Furthermore, Under Armour has not only filed a counterclaim with respect to insurance coverage, but has also claimed breach of contract as to all of these excess insurance coverage carriers.[4]  (ECF No. 57 *SEALED*.)

Under Armour tendered the Underlying Matters to its excess policy insurers, Continental, SRCSAIC, National Union, Freedom, QBE, Argonaut, XL, Allied World, and Navigators, who dispute certain coverage.  The excess insurers do not dispute coverage with respect to a prior policy covering an earlier period, but do dispute whether coverage is triggered under a subsequent policy covering a later period.  Simply stated, the Insurers contend that the consolidated securities class action, the derivative matters, and investigations all constitute one claim first made under an earlier policy, for which they acknowledge

---

[4] As noted in footnote 2, all claims and counterclaims between Endurance and Under Armour—specifically, Counts VI and VII of the Amended Complaint (ECF No. 29 *SEALED*) and Count I of Under Armour's Counterclaims (ECF No. 57 *SEALED*)—have been dismissed.  As such, only Counts I–V of the Amended Complaint (ECF No. 29 *SEALED*) and Counts II and III of Under Armour's Counterclaims (ECF No. 57 *SEALED*) remain pending.  This Memorandum Opinion concerns only claims for declaratory judgment— specifically, Counts I–V of the Amended Complaint (ECF No. 29 *SEALED*) and Count III of Under Armour's Counterclaims (ECF No. 57 *SEALED*)—as Count II of Under Armour's Counterclaims alleges breach of contract against the Insurers and is a triable issue.

coverage.   However, those Insurers contend that there is no additional coverage under subsequent policies.  Under Armour contends that the government investigations and claims arising therefrom constitute a separate claim within the ambit of additional coverage under subsequent policies.

Presently pending[5] are cross-motions for judgment on the pleadings with respect to the insurance coverage.[6]   (ECF Nos. 135 *SEALED*; 139-2 *SEALED.)    The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023). For the reasons stated below, the Insurers' Motion for Judgment on the Pleadings (ECF No. 135 *SEALED*) is DENIED; and Under Armour's Motion for Judgment on the Pleadings (ECF No. 139-2 *SEALED*) is GRANTED.   As a matter of law, the government investigations and the claims arising therefrom constitute a claim first made during the subsequent policy period, entitling Under Armour to coverage.

## BACKGROUND

On a motion for judgment on the pleadings, as in a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  This Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  The parties

---

[5]  Also pending is Under Armour's Motion to Seal (ECF No. 139 *SEALED*), which is GRANTED.

[6]  As noted in footnote 4, the breach of contract counterclaim advanced by Under Armour (ECF No. 57 *SEALED*) is not within the ambit of this insurance coverage dispute.  As such, this Memorandum Opinion does not address that separate claim.

have stipulated that certain documents are considered part of the pleadings: "[a]ll documents attached as exhibits to the Complaint filed on September 28, 2022 and the Amended Complaint filed on January 27, 2023," "[t]he 2019–2021 policies sold to Under Armour by any of the Insurers," "[a]ll coverage correspondence exchanged between the Insurers and Under Armour to date," "[a]ll complaints, subpoenas, orders, and other filings in the underlying actions for which Under Armour seeks coverage from the Insurers," and "[a]ll shareholder demand letters for which Under Armour seeks coverage from the Insurers." (ECF No. 125.)

## I.       The Securities Class Action

On February 10, 2017, Brian Breece ("Breece") filed a class action complaint (the "Breece Complaint") against Under Armour, Kevin Plank ("Plank"), and another Under Armour executive, Lawrence Molloy. *In re Under Armour Sec. Litig.*, No. RDB-17-388 (D. Md. Feb. 10, 2017), ECF No. 1. The Breece Complaint was based on allegations of false and overly optimistic public statements about Under Armour's net revenue projections and growth rates, and allegedly misleading statements regarding inventory growth, discounting, and margin decline. *Id.* On March 23, 2017, this Court consolidated Breece's Complaint with other suits filed against Under Armour, Plank, and numerous other defendants, all of which centered on similar allegations. No. RDB-17-388 (D. Md. Mar. 3, 2017), ECF No. 3.

On August 9, 2017, Lead Plaintiff Aberdeen City Council as Administrating Authority for North East Scotland Pension Fund ("Aberdeen") filed the Consolidated Amended Complaint, No. RDB-17-388 (D. Md. Aug. 9, 2017), ECF No. 30, which was subsequently amended on November 16, 2018. No. RDB-17-388 (D. Md. Nov. 16, 2018), ECF No. 78. That Second Amended Complaint ("SAC") named only Under Armour and Plank as

4

defendants, alleging that between September 16, 2015 and January 30, 2017, Under Armour and Plank issued a series of false and misleading statements about demand for Under Armour products and Under Armour's financial condition.  *Id.* ¶¶ 2, 14.

On August 19, 2019, this Court dismissed the SAC with prejudice.  *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446 (D. Md. 2019).  Judgment was entered on September 9, 2019, No. RDB-17-388 (D. Md. Sept. 9, 2019), ECF No. 101, and the class action plaintiffs filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit on September 17, 2019.  No. RDB-17-388 (D. Md. Sept. 17, 2019), ECF No. 102.

In November 2019, while the appeal was pending, the *Wall Street Journal* ("*WSJ*") published two articles reporting that Under Armour had been the subject of investigations by the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") since 2017.[7]  Based on the reports of the *WSJ* that Under Armour was the subject of SEC investigations, the class action plaintiffs moved on November 18, 2019 for an indicative ruling, No. RDB-17-388 (D. Md. Nov. 18, 2019), ECF No. 105, requesting that this Court grant the its Motion for Relief from the Court's September 9, 2019 Judgment pursuant to Federal Rule of Civil Procedure 60(b), if the Fourth Circuit remanded for that purpose.  No. RDB-17-388 (D. Md. Nov. 18, 2019), ECF No. 106.  On January 22, 2020, this Court granted the plaintiffs' Motion for Indicative Ruling and indicated that it would grant the Motion for Relief.  No. RDB-17-388 (D. Md. Jan. 22, 2020), ECF Nos. 139; 140.  After the Fourth Circuit remanded

---

[7] *See* Aruna Viswanatha & Khadeeja Safdar, *Under Armour Is Subject of Federal Accounting Probes*, WALL ST. J. (Nov. 3, 2019), available at https://www.wsj.com/articles/under-armour-is-subject-of-federal-accounting-probe-11572819835; Aruna Viswanatha & Khadeeja Safdar, *Inside Under Armour's Sales Scramble: 'Pulling Forward Every Quarter'*, WALL ST. J. (Nov. 14, 2019), available at https://www.wsj.com/articles/inside-under-armours-sales-scramble-pulling-forward-every-quarter-11573777489.

the class action to this Court on August 13, 2020, No. RDB-17-388 (D. Md. Aug. 13, 2020), ECF No. 145, this Court granted the Motion for Relief and directed plaintiffs to file a third amended complaint.  No. RDB-17-388 (D. Md. Sept. 14, 2020), ECF No. 150.

On October 14, 2020, Aberdeen filed the operative Consolidated Third Amended Complaint ("TAC").  No. RDB-17-388 (D. Md. Oct. 14, 2020), ECF No. 153.  The TAC alleged that Under Armour and Plank misled investors between September 16, 2015 and November 1, 2019 by falsely claiming that consumer demand for the brand's products was strong between the third quarter of 2015 and the fourth quarter of 2016.  *Id.*  The TAC alleges that Under Armour and Plank led investors to believe that their 26-consecutive quarter 20% year-over-year revenue growth streak was "safely intact," when in reality demand for the Under Armour's products was in decline.  *Id.*  Important to the instant dispute, the TAC added allegations that Under Armour and Plank manipulated the company's financial results by pulling sales forward from future quarters and engaging in other allegedly suspect sales practices.  *Id.*

On May 31, 2021, this Court denied the defendants' Motion to Dismiss the TAC.  *In re Under Armour Sec. Litig.*, 540 F. Supp. 3d 513 (D. Md. 2021).  On December 1, 2021, plaintiffs filed their Motion for Class Certification, No. RDB-17-388 (D. Md. Dec. 1, 2021), ECF No. 197, which was granted on September 29, 2022.  *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285 (D. Md. 2022).  Most recently, this Court denied Under Armour and Plank's Motion for Summary Judgment.  No. RDB-17-388 (D. Md. Feb. 26, 2024), ECF Nos. 377; 378.  A twelve-day jury trial is scheduled to begin in the securities class action on July 15, 2024.  No. RDB-17-388 (D. Md. Sept. 14, 2023), ECF No. 295.

## II.    The Derivative Matters

On August 17, 2016, Under Armour received a demand for inspection of its books and records on behalf of shareholder Chad Sorenson ("Sorenson") (the "Sorenson books and records demand").  (ECF No. 135-3 *SEALED*.)  On October 17, 2016, Under Armour's Board of Directors received a derivative demand on Sorenson's behalf (the "Sorenson derivative demand").  (ECF No. 153-4 *SEALED*.)  On February 21, 2017, Under Armour received another derivative demand on behalf of shareholder Shawn Luger ("Luger") (the "Luger derivative demand").  (ECF No. 1-4.)  In general, the Sorenson and Luger demands concerned alleged false and misleading statements about the effect of the bankruptcy of Under Armour's customer The Sports Authority on Under Armour's financial outlook in early 2016, as well as claims of insider trading.  (ECF Nos. 135-3 *SEALED*; 153-4 *SEALED*; ECF No. 1-4.)

Under Armour subsequently received several additional derivative demands, several of which followed the *WSJ* articles.  (ECF Nos. 1-5; 1-6; 1-7.)  Under Armour declined to pursue any of those derivative demands, and several resulted in derivative lawsuits, including *James Kenney v. Kevin Plank*, No. 24-c-18-002828 (Md. Cir. Ct. Balt. City filed June 29, 2018), which remains pending in the Circuit Court for Baltimore City as of the date of this filing, and *Balraj Paul v. Kevin Plank*, No. RDB-18-2239 (D. Md. filed July 23, 2018), which this Court dismissed without prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), No. RDB-18-2239 (D. Md. Sept. 27, 2024), ECF Nos. 97; 98, though the *Paul* plaintiffs' appeal of this Court's dismissal and subsequent denial of a motion for reconsideration remains pending before the Fourth Circuit.  *Paul v. Plank*, No. 24-1144 (4th Cir. filed Feb. 7, 2024).

### III.   The Government Investigations

████████████████████████████████████████████████

████████████████████████████████████████  (ECF No.

8-1 *SEALED*.)  ██████████████████████████████████

██████  (ECF Nos. 135-7 *SEALED*; 135-8 *SEALED*; 135-9 *SEALED*; 135-10

*SEALED*; 135-11 *SEALED*.)  ████████████████████████████

██████████████  (ECF No. 8-2 *SEALED*.)  On July 22, 2020, the SEC issued Wells

Notices[8] to Under Armour, Plank, and another Under Armour executive, David Bergman.

(ECF No. 1-8.)  On May 3, 2021, the SEC issued an order (the "SEC Order"), which charged

Under Armour with misleading investors as to the bases of its revenue growth and failing to

disclose known uncertainties concerning its future revenue prospects and noted that Under

Armour agreed to pay a $9 million civil penalty to settle the action.[9]  (ECF No. 135-12

*SEALED*.)  Important to the instant dispute, the government investigations focused on

Under Armour's allegedly suspect sales practices—specifically, pull forwards—and related

alleged accounting issues.  (Id.)

### IV.   The Request for Coverage and Subsequent Denial

Under Armour acknowledges that it reported the Breece Complaint, the Sorenson

books and record demand, the Sorenson derivative demand, and the Luger derivative demand

to the Insurers during the policy period from February 28, 2016 to March 31, 2017 (the

---

[8] "A Wells Notice is a notice that the SEC sends to an individual or entity at the conclusion of an investigation informing the recipient that the SEC's enforcement division intends to recommend an enforcement action against them." *Fries v. Northern Oil and Gas, Inc.*, 285 F. Supp. 3d 706, 712 n.3 (S.D.N.Y. 2008).
[9] The Order specified that Under Armour consented to the entry of the Order "without admitting or denying the findings [t]herein."  (ECF No. 135-12 *SEALED*.)

"2016–2017 Policy Period").  (ECF Nos. 29 *SEALED* ¶¶ 53, 54; 59 *SEALED* ¶¶ 53, 54.)

The Insurers have acknowledged coverage under the 2016–2017 Policies, but take the position

that the Underlying Matters—the government investigations as well as the current securities

class action and the subsequently received derivative matters—all involve the same "Wrongful

Act" or "Interrelated Wrongful Acts."  (ECF No. 29 *SEALED* ¶ 55.)  Accordingly, the

Insurers are treating the Underlying Matters as a single Claim first made during the 2016–2017

Policy Period.  (*Id.* ¶¶ 55, 56; ECF No. 59 *SEALED* ¶¶ 55, 56.)  Thus, the instant dispute

involves Under Armour's claim for additional coverage under the policies (the "2017–2018

Policies") issued for the March 31, 2017 to April 30, 2018 policy period (the "2017–2018

Policy Period").

## V.    Relevant Policy Language

Endurance issued Maryland Primary Management Liability Insurance for Public

Companies Policy No. DOP 10000597602 to Under Armour for the 2017–2018 Policy Period

(the "2017–2018 Primary Policy").  (ECF No. 1-12.)  Each of the excess Insurers issued

consecutive Directors and Officers ("D&O") insurance policies to Under Armour for the

2017–2018 Policy Period (the "2017–2018 Excess Policies").  (ECF Nos. 29-3 *SEALED*;

29-4 *SEALED*; 29-5 *SEALED*; 29-6 *SEALED*; 29-7 *SEALED*; 29-8 *SEALED*;

29-9 *SEALED*; 29-10 *SEALED*; 29-11 *SEALED*.)

In their Motion for Judgment on the Pleadings, the Insurers emphasize that the 2017–

2018 Policies provide coverage on a claims-made basis, meaning coverage is only available for

Claims first made during the 2017–2018 Policy Period pursuant to the 2017–2018 Primary

Policy.  (ECF No. 135-1 *SEALED* at 23–26 (citing ECF No. 1-12).)  Important to the

instant dispute, the 2017–2018 Primary Policy provides coverage as follows:

> B.  Company Indemnification
> The Insurer shall pay on behalf of the Company all Loss for which the
> Company grants indemnification to the Insured Persons and which the
> Insured Persons have become legally obligated to pay on account of a Claim
> first made against the Insured Persons during the Policy Period . . . for any
> Wrongful Acts taking place prior to the end of the Policy Period . . .

> C.  Company Securities Liability
> The Insurer shall pay on behalf of the Company all Loss for which the
> Company becomes legally obligated to pay on account of a Securities Claim
> first made against the Company during the Policy Period . . . for a Wrongful
> Act taking place prior to the earlier of the end of the Policy Period or
> commencement of the Run-Off Coverage Period.

(ECF No. 1-12.)  Section II of the 2017–2018 Primary Policy, which provides General

Definitions, as amended by Endorsement 4, provides the following definition for Claim:

> 1.  a written demand for monetary damages or other relief, including, but not
> limited to, a demand for injunctive relief, against any Insured for a Wrongful
> Act, commenced by the Insured's receipt of such demand;

> 2.  a civil proceeding against any Insured for a Wrongful Act, commenced by
> the service of a complaint or similar pleading;

> . . .

> 6.  a formal administrative or regulatory proceeding against any Insured for a
> Wrongful Act, commenced by the filing of a notice of charge, formal
> investigative order or similar document;

> 7.  a Formal Investigation of an Insured[.]

(*Id.*)  In relevant part, Endorsement 4 provides that "Wrongful Act" is defined to mean: "any

error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or

allegedly committed or attempted by any of the Insured Persons . . . or with respect to Insuring

Agreement C, by the Company[.]"  (*Id.*)

The 2017–2018 Primary Policy contains a Single Claims provision found in Section III.C that provides:

> All Claims which arise out of the same Wrongful Act and all Interrelated Wrongful Acts of Insureds shall be deemed one Claim, and such Claim shall be deemed to be first made on the date the earliest of such Claims is first made against any Insured, regardless of whether such date is before or during the Policy Period.

(*Id.*) Endorsement 4 amended the Single Claims provision "by the addition of the following":

> All Claims and Inquiries that arise out of the same fact, circumstance, situation, event, or Wrongful Act, or facts, circumstances, situations, events or Wrongful Acts that are logically or causally related shall be deemed one Claim, which shall be deemed to be first made on the earliest that the first of any such Claims is made, or the first of any such Inquiries is received by an Insured Person.

(*Id.*) The 2017–2018 Primary Policy defines Interrelated Wrongful Acts as follows:

> Interrelated Wrongful Acts means all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

(*Id.*)

Endorsement 2 to the 2017–2018 Primary Policy, titled Specific Matter Exclusion, provides the standard to be used in determining whether a new Claim should be treated as arising out of certain previously filed Claims, including the Sorenson books and records demand, the Sorenson derivative demand, the Breece Complaint, and the Luger derivative demand. (*Id.*) It provides:

> The Insurer shall not be liable for that portion of Loss on account of any Claim resulting from any litigation, claim, proceeding, event, or other matter described below, or any Wrongful Act or Interrelated Wrongful Act alleged therein:
>
>> Notice dated September 2, 2016, submitted under Continental Casualty Company ("CNA") policy number 425631668 and all policies written specifically excess thereto (collectively, "the 2016–17 UA D&O Tower"), enclosing the August 11, 2016

Demand Letter for Inspection of Books and Records sent by Levi & Korsinsky LLP on behalf of Chad Sorensen to the Board or Directors of Under Armour, Inc. ("UA")

Notice dated November 4, 2016, submitted under the 2016–17 UA D&O Tower, enclosing the October 17, 2016 Demand upon the Board of Directors of UA to Investigate Claims, Initiate Legal Action and Take Necessary and Appropriate Remedial Measures sent by Levi & Korsinsky LLP on behalf of Chad Sorensen to the Board or Directors of UA

Notice dated February 16, 2017, submitted under the 2016–17 UA D&O Tower, enclosing the Class Action Complaint styled Brian Breece v. Under Armour, et al. (Case 1:17-cv-00388-RDB) filed on February 1, 2017 in the United States District Court for the District of Maryland

Notice dated March 8, 2017, submitted under the 2016–17 UA D&O Tower, enclosing the Shareholder Demand Pursuant to Maryland Law sent by Profy Promisloff & Ciarlanto, P.C. on behalf of Shawn Luger to Kevin A. Plank, Chief Executive Officer and Chairman of the Board of Directors of UA

Interrelated Wrongful Acts means the Wrongful Acts that have as a common nexus the fact, circumstance, situation, event, transaction or series of causally connected facts, circumstances, situations, events or transactions.

(*Id.*)

The "Prior Notice Exclusion," which is found in Section III.A.1 of the 2017–2018 Primary Policy and amended by Endorsement 4, is also relevant to the instant dispute. It provides as follows:

The Insurer shall not be liable under this Coverage Section for Loss on account of that portion of any Claim made against any Insured . . . based upon, arising out of, or attributable to any fact, circumstance, or situation which has been the subject of any written notice given under any directors and officers liability policy of which this Coverage Section is a direct or indirect renewal or replacement and accepted by the insurer of such policy as a notice of circumstances[.]

(*Id.*)

Also relevant to the instant dispute is the Allocation provision, found in Section V of the 2017–2018 Primary Policy. (*Id.*) In relevant part, the Allocation provision provides:

> If in any Claim the Insureds incur both Loss covered by this Policy and loss not covered by this Policy either because the Claim against the Insureds includes both covered and uncovered matters or because the Claim is made against both Insureds who are afforded coverage for such Claim and others, including Insureds, who are not afforded coverage for such Claim, the Insureds and the Insurer shall use their best efforts to allocate such amount between covered Loss and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters; provided however that one hundred percent (100%) of any such Defense Costs shall be allocated to covered Loss if and to the extent such Defense Costs are incurred by covered Insureds and are in part covered and in part not covered by this Policy solely because the Claim against the Insureds includes both covered and uncovered matters.

(*Id.*)

## VI.   The 2019–2021 Policies

In 2019, while the government investigations, as to which the excess Insurers were provided notice, were ongoing, Endurance and Under Armour entered the 2019–2021 Primary Policy. (ECF No. 145-3.) Endorsement 18 (the "Specific Investigation Exclusion") states that:

> The Insurer shall not be liable under this Policy for any Loss, based upon, arising from, in connection with, or in any way involving any Claim(s) alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to any Wrongful Act, Interrelated Wrongful Act, or the subject matter of any of the following:
>
> 1. any regulatory investigation or proceeding against any Insured that began prior to April 30, 2019, including, but not limited to: (a) Notice dated September 05, 2017 submitted under Endurance American Insurance Policy number DOP10005972602 ("the 2017–18 Sompo primary policy") and all policies written specifically excess thereto (collectively, "the 2017–18 UA D&O Tower"), involving the SEC Investigation ███████████

████████████████████████████████████
████████████████████████████████████

████████████ Wells Notice(s) and/or enforcement proceeding(s) resulting therefrom (collectively, "the SEC Investigation"); or (b) any DOJ Investigation(s) relating to ████████████████

████████████████████████████████████
████████████████████████████████████

████████████ ("the DOJ Investigation");

2. any litigation or demand involving the disclosure of the SEC Investigation or the DOJ Investigation;

3. any separation agreements with any current or former Under Amour employee(s), whereby allegations brought by or on behalf of such employee(s) involve or are in any way related to allegations at issue either in the SEC Investigation or the DOJ Investigation;

Interrelated Wrongful Acts means the Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction or series of causally connected facts, circumstances, situations, events or transactions. Such Interrelated Wrongful Acts shall be deemed to be a Single Claim pursuant to Section III, Limit of Liability, Retention and Single Claims.

It is further understood and agreed that in the event a Claim is excluded pursuant to this Endorsement, and such Claim was made during the Policy Period or Discovery Period or Run-Off Coverage Period (if applicable) and reported to the Insurer in satisfaction of all Claims-reporting requirements of this Policy, including without limitation all terms and conditions of Section VIII. Reporting and Notice of the General Terms and Conditions (as amended) of this Policy, then such Claim will be deemed to have been:

(i) made during the 2017–18 UA D&O Tower; and

(ii) noticed to the Insurer pursuant to and in satisfaction of Section VIII. Reporting and Notice of the General Terms and Conditions (as amended) of the Sompo 2017–18 primary policy

subject to all terms, conditions, limitations and exclusions of the Prior Policy.

(ECF No. 145-3 *SEALED*.)   Under Armour emphasizes that XL, National Union, Freedom, QBE, Argonaut, and Navigators all sold "following form" excess policies to Under Armour in the 2019–2021 tower of coverage, each of which incorporated this endorsement

into their own policies.  (ECF Nos. 145-3 *SEALED*; 145-4 *SEALED*; 145-5 *SEALED*;

145-6 *SEALED; 145-7 *SEALED*; 145-8 *SEALED; 145-9 *SEALED*.)

## VII.    Procedural History

As noted *supra*, the Insurers have denied coverage for the Underlying Matters, claiming

there is no Claim first made during the 2017–2018 Policy Period, and the Specific Matter

Exclusion and the Prior Notice Exclusion each bar coverage.  And so, this litigation followed,

with Insurers filing a Complaint for Declaratory Judgment against Under Armour.  (ECF No.

1.)  Insurers subsequently filed an Amended Complaint, (ECF No. 29 *SEALED*), which

Under Armour answered, asserting counterclaims for declaratory judgment and breach of

contract against the Insurers.  (ECF No. 57 *SEALED*.)  Shortly after the Insurers responded

to  Under  Armour's  counterclaims,  (ECF Nos.  70  *SEALED*;  73  *SEALED*;  74

*SEALED*; 82 *SEALED*; 85 *SEALED*; 87 *SEALED*; 90 *SEALED*; 98 *SEALED*;

99 *SEALED*), the parties filed cross-motions for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c).  (ECF Nos. 135, 139-2.)  These motions are ripe for review.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for

judgment on the pleadings any time after the pleadings are closed, as long as it is early enough

not to delay trial.  Fed. R. Civ. P. 12(c).  The legal standard governing such a motion is the

same as a motion to dismiss under Rule 12(b)(6).  *Butler v. United States*, 702 F.3d 749, 751–52

(4th Cir. 2012).  Therefore, a motion for judgment on the pleadings "should only be granted

if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing

all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that

the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact.  *Butler*, 702 F.3d at 752.

## ANALYSIS

The excess policy Insurers, as Plaintiffs/Counterclaim Defendants, move for judgment in their favor on all counts based on the pleadings and an order declaring that the policies that they issued to Defendant/Counterclaim Plaintiff Under Armour for the March 31, 2017 to April 30, 2018 policy period do not provide coverage for the underlying securities class action, derivative matters, and government investigations.  (ECF No. 135 *SEALED*.)  The Insurers first argue that the Underlying Matters are not a Claim first made during the 2017–2018 Policy Period; rather, the Insurers contend that the underlying securities class action is a single Claim first made when the Breece Complaint was served on February 10, 2017—before the 2017–2018 Policy Period—and the related derivative demands, derivative actions, and government investigations arise out of the same Wrongful Act or Interrelated Wrongful Acts as the securities class action.  (*Id.* at 31–42.)  Therefore, according to the Insurers, the Underlying Matters are deemed a single Claim first made before the 2017–2018 Policy Period.  (*Id.*)  Second, the Insurers assert that the Specific Matter Exclusion in the 2017–2018 Primary Policy bars coverage for the Underlying Matters because they arise out of enumerated excluded matters, including the Breece Complaint as well as the Sorenson and Luger demands that were reported during the policy period from February 28, 2016 to March 31, 2017, or conduct alleged therein.  (*Id.* at 43–44.)  Third, the Insurers contend that the Prior Notice Exclusion in

the 2017–2018 Primary Policy bars coverage for the Underlying Matters because they arise out of facts, circumstances, or situations reported to Under Armour's prior D&O liability insurers during the 2016–2017 Policy Period.  (*Id.* at 44–46.)

Under Armour, as the Defendant and Counterclaim Plaintiff, contends that all Counts in the Insurers' First Amended Complaint should be dismissed with prejudice.  (ECF No. 139-3 *SEALED*.)  Under Armour first argues that the 2017–2018 Policies cover the government investigations, (*id.* at 11–37), noting that six[10] of the nine remaining Insurers agreed by contract to deem claims interrelated with the government investigations as made during the 2017–2018 Policy Period, (*id.* at 13–18); that all of the Insurers have taken or endorsed the position that the government investigations are not the same as the securities class action, (*id.* at 18–21); and that the government investigations cannot be treated as the same claim as the securities class action, (*id.* at 21–37).  Second, Under Armour argues that the addition and consolidation of separate "Claims" in the TAC in the securities class action does not defeat coverage for the portions of the securities class action that result from the allegations in the government investigations.  (*Id.* at 37–42.)  Third, Under Armour asserts that the derivative matters contain separate claims from the securities class action.  (*Id.* at 43–45.)  Lastly, Under Armour contends that the Insurers' pleadings do not support applications of the Prior Notice Exclusion.  (*Id.* at 45–47.)

---

[10]  The six insurers that sold "following form" excess policies to Under Armour in the 2019–2021 tower of coverage are XL, National Union, Freedom, QBE, Argonaut, and Navigators.  (ECF Nos. 145-3 *SEALED*; 145-4 *SEALED*; 145-5 *SEALED*; 145-6 *SEALED; 145-7 *SEALED*; 145-8 *SEALED; 145-9 *SEALED*.)

Resolution of the parties' motions turns on the meaning of several disputed policy terms in the 2017–2018 Primary Policy. In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits. *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 605 (D. Md. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties' filings assume, without discussion, that Maryland law applies here. In contract claims, Maryland applies the doctrine of *lex loci contractus*, meaning the law of the place where the contract was made applies. *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). It is undisputed that the relevant insurance contracts were made in Maryland. Accordingly, this Court shall apply Maryland substantive law.

Maryland law is well settled that "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Mitchell v. AARP Life Ins. Program*, 779 A.2d 1061, 1069 (Md. App. 2001) (citation omitted). Accordingly, "'ordinary principles of contract interpretation apply.'" *Megonnell v. United Servs. Auto. Ass'n*, 796 A.2d 758, 772 (Md. 2002) (citation omitted). In "'deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself.'" *Universal Underwriters Ins. Co. v. Lowe*, 761 A.2d 997, 1005 (Md. App. 2000) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1031 (Md. 1993)).

The Supreme Court of Maryland[11] has explained that interpretation of insurance contracts, like any other contract, "begins with the language employed by the parties."

---

[11] At the time of *MAMSI*, the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Supreme Court of Maryland." The name change took effect on December 14, 2022.

*MAMSI Life & Health Ins. Co. v. Callaway*, 825 A.2d 995, 1005 (Md. 2003) (citation omitted). Generally, Maryland courts "analyze the plain language of [an insurance] contract according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 771 (Md. 1997). If the policy's language is unambiguous, then the Court gives effect to "its plain, ordinary, and usual meaning, taking into account the context in which [the language] is used." *John L. Mattingly Constr. Co. Inc. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010) (citation omitted). When a contract is unambiguous, "there is no room for construction." *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985). Moreover, the insurance policy, including endorsements, "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined." *United Servs. Auto Ass'n v. Riley*, 899 A.2d 819, 833 (Md. 2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 656 A.2d 779, 784 (Md. 1995)).

Here, the Insurers bear the burden of showing the applicability of policy exclusions. *See Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co.*, 517 F. Supp. 3d 458, 461 (D. Md. 2021) (citing *ACE Am. Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 798 (D. Md. 2008); *Trice Geary & Myers, LLC v. Camico Mut. Ins. Co.*, 459 F. App'x 266, 274 (4th Cir. 2011)). Under Armour bears the burden "of proving every fact essential to [its] right to recover" regarding the scope of the coverage. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, No. CCB-03-3408, 2012 U.S. Dist. LEXIS 29566, 2012 WL 734170, at *2 (D. Md. Mar. 6, 2012)).

At bottom, this Court finds that the excess Insurers cannot avoid coverage under the 2017–2018 Policies, thus Plaintiffs/Counterclaim Defendants' Motion for Judgment on the

Pleadings (ECF No. 135 *SEALED*) is DENIED; and Under Armour's Motion for Judgment on the Pleadings (ECF No. 139-2 *SEALED*) is GRANTED with respect to insurance coverage.

## I.  The Appropriate Standard for Determining Whether a Claim Is Excluded Under the 2017–2018 Primary Policy's Single Claims Provision

The Single Claims provision[12] found in Section III.C of the 2017–2018 Primary Policy provides:

> All Claims which arise out of the same Wrongful Act and all Interrelated Wrongful Acts of Insureds shall be deemed one Claim, and such Claim shall be deemed to be first made on the date the earliest of such Claims is first made against any Insured, regardless of whether such date is before or during the Policy Period.

(*Id.*)  Endorsement 4 "amended [Subsection III.C, the Single Claims provision,] by the addition of the following":

> All Claims and Inquiries that arise out of the same fact, circumstance, situation, event, or Wrongful Act, or facts, circumstances, situations, events or Wrongful Acts that are logically or causally related shall be deemed one Claim, which shall be deemed to be first made on the earliest that the first of any such Claims is made, or the first of any such Inquiries is received by an Insured Person.

(*Id.*)

Under Armour contends that Endorsement 4 replaced the original Single Claims provision, while the Insurers assert that Endorsement 4 merely created two separate definitions.  Under Maryland law, the main insurance policy and any endorsements constitute a single insurance contract, and an effort should be made to construe them harmoniously.

---

[12] Because the Single Claims provision is a mechanism for the Insurers to deny coverage, it is an exclusion.  As such, the Insurers bear the burden of showing that the Breece Complaint and the government investigations are a single Claim.  *Perdue Farms*, 517 F. Supp. 3d at 461–62.

*Prince George's Cnty. v. Loc. Gov't Ins. Tr.*, 879 A.2d 81, 88 (Md. 2005) (citations omitted).

However, where an endorsement conflicts with the main policy, the endorsement controls.

*Id.*   Here, Endorsement 4 provides that it "amend[s] [the Single Claims provision] by []

*addition.*" (ECF No. 1-12 (emphasis added).)  However, Endorsement 4 inserts a standard that

is significantly narrower than the standard in the main policy.  Because of this inconsistency,

this Court finds that the language in Endorsement 4 replaced the Single Claims provision

provided in the main policy.  As such, the appropriate inquiry under the Single Claims

provision is whether the "Claims . . . arise out of [1] the same fact, circumstance, situation,

event, or Wrongful Act, or [2] facts, circumstances, situations, events or Wrongful Acts that

are logically or causally related."  (*Id.*)

## A. The Government Investigations (Count II)

According to the Insurers, the government investigations do not constitute a claim first

made during the 2017–2018 Policy Period.  Rather, the Insurers contend that the government

investigations, as well as the other disputed Underlying Matters, are part of a single Claim first

made when the Breece Complaint was filed on February 10, 2017, and the Underlying Matters

arise out of the same Wrongful Act or Interrelated Wrongful Acts as the Breece Complaint.

This Court disagrees.

The narrower Single Claims provision standard set forth in Endorsement 4 is

unavailing to the Insurers' position.  In short, the Breece Complaint centered on allegations

of false and overly optimistic public statements about Under Armour's net revenue projections

and growth rates, and allegedly misleading statements regarding inventory growth,

discounting, and margin decline.  By contrast, the government investigations focused on

certain sales and accounting practices employed by Under Armour.  Such allegations were wholly absent from the Breece Complaint and early derivative demands.  As such, the government investigation and the Breece Complaint are not a "Claim . . . that arise[s] out of the same, fact, circumstance, situation, event, or Wrongful Act."

The issue of whether the Breece Complaint and government investigations are "Wrongful Acts that are logically or causally related" is a closer call.  In general, courts have found claims to be interrelated when they have a common nexus of facts and arose out of the same occurrence of wrongful acts. *ACE Am. Ins. Co.*, 570 F. Supp. 2d at 798.  While this Court recognizes that the class action plaintiffs considered the findings from the government investigations to be useful evidence in their case, the claims involve different parties, focus on overlapping, but not identical, time periods, raise different theories of liability, rely on different evidence, and seek different relief.   "At some point, a relationship between two claims . . . might be so attenuated or unusual that an objectively reasonable insured could not have expected they would be treated as a single claim under the policy." *Perdue Farms*, 517 F. Supp. 3d at 462 (citing *Northrop Grumman Corp. v. Axis Reinsurance Co.*, 809 F. App'x 80, 88 (3d Cir. 2020)).  As such, this Court finds that the supposed common nexus of facts between the government investigations and the Breece Complaint is insufficient to make the two "Wrongful Acts that are logically or causally related" and thus subject to the Single Claims provision.

Accordingly, judgment is entered in favor of the Defendant/Counterclaim Plaintiff Under Armour with respect to Count II of the Insurers' Amended Complaint.  Because this Court finds that the government investigations trigger the 2017–2018 Policies, this Court need

not address Under Armour's assertion that XL, National Union, Freedom, QBE, Argonaut, and Navigators agreed by contract to deem claims interrelated with the government investigations as made during the 2017–2018 Policy Period; nor does this Court need to address Under Armour's argument that all nine Insurers have taken or endorsed the position that the government investigations are not the same claim as the securities class action.

## B.  The Securities Class Action (Count I)

This Court must now consider whether the 2017–2018 Policies afford coverage for the portions of the securities class action that result from the findings of the government investigations and were subsequently added to the securities class action after the SEC Order. The 2017–2018 Primary Policy defines Claim to include, among other things, "a written demand for monetary damages or other relief, including, but not limited to, a demand for injunctive relief, against any Insured *for a Wrongful Act*, commenced by the Insured's receipt of such demand;" "a civil proceeding against any Insured *for a Wrongful Act*, commenced by the service of a complaint or similar pleading;" "a formal administrative or regulatory proceeding against any Insured *for a Wrongful Act*, commenced by the filing of a notice of charge, formal investigative order or similar document;" and a "a Formal Investigation of an Insured[.]" (ECF No. 1-12 (emphasis added).)  The inclusion of "for a Wrongful Act" is fatal to the Insurers' position on this matter.  Endorsement 4 provides that "Wrongful Act" is defined to mean: "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the Insured Persons . . . or with respect to Insuring Agreement C, by the Company[.]"  (*Id.*)  Where, as here, the Insured is faced with a consolidated action and an amended complaint adds allegations as to a *different* Wrongful Act,

this Court sees no basis in the 2017–2018 Primary Policy's definition of Claim to treat the new allegations automatically as part of the same Claim as the Wrongful Acts alleged in the original Breece Complaint.[13]

Nor does the Single Claims provision mandate such a result.  As with the government investigations, the portion of the securities class action that results from the findings of the government investigations and were subsequently added to the securities class action after the SEC Order trigger coverage under the 2017–2018 Policies.  Accordingly, judgment is entered in favor of the Defendant/Counterclaim Plaintiff Under Armour with respect to Count I of the Insurers' Amended Complaint.

## C. The Derivative Matters (Count III)

In Count III of the Amended Complaint, the Insurers assert that coverage for the derivative matters should be barred because, according to the Insurers, all the derivative matters result from the same Wrongful Acts as the Breece Complaint and the Sorenson and Luger demands, which were each Claims first made and reported before the 2017–2018 Policy Period.  In general, the Sorenson and Luger demands, like the original Breece Complaint, were

---

[13] To be sure, the 2017–2018 Primary Policy contemplates a single lawsuit containing more than one Claim. Section V of the 2017–2018 Primary Policy, the Allocation provision, provides:

> If in any Claim the Insureds incur both Loss covered by this Policy and loss not covered by this Policy either because the Claim against the Insureds includes both covered and uncovered matters or because the Claim is made against both Insureds who are afforded coverage for such Claim and others, including Insureds, who are not afforded coverage for such Claim, the Insureds and the Insurer shall use their best efforts to allocate such amount between covered Loss and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters; provided however that one hundred percent (100%) of any such Defense Costs shall be allocated to covered Loss if and to the extent such Defense Costs are incurred by covered Insureds and are in part covered and in part not covered by this Policy solely because the Claim against the Insureds includes both covered and uncovered matters.

(*Id.*)

based on allegedly overly optimistic public statements by Under Armour executives about its net revenue projections and growth rates.  However, later shareholder derivative matters include allegations wholly absent from the Breece Complaint and the earlier shareholder demands made during the 2016–2017 Policy Period—namely, allegations regarding the sales and accounting practices that are the subject of the government investigations.  Consistent with the above, the derivative matters containing allegations related to the government investigations trigger coverage under the 2017–2018 Policies.  As such, judgment is entered in favor of the Defendant/Counterclaim Plaintiff Under Armour with respect to Count III of the Insurers' Amended Complaint.

## II.    The Specific Matter Exclusion (Count IV)

The Insurers contend that even if the Underlying Matters were Claims first made during the 2017–2018 Policy Period, the Specific Matter Exclusion independently and completely bars coverage.  According to the Insurers, this exclusion precludes coverage for the securities class action because the TAC results from the Breece Complaint, given that the TAC is merely the newest iteration of that complaint.  The Insurers further contend that this exclusion precludes coverage for the government investigations and derivative matters because they each result from any litigation, claim, proceeding, event or other matter at issue in the securities class action and/or those derivative matters specifically identified in the exclusion, or any Wrongful Act or Interrelated Wrongful Act alleged therein.  (*Id.*)  In turn, Under Armour argues that the Insurers cannot meet their burden to establish that the Specific Matter Exclusion precludes coverage under the 2017–2018 Policies because: (1) the allegations resulting from the government investigations, including those involving the alleged pull

forwards, constitute a separate Claim that is not described in the exclusion, and (2) regardless of the number of Claims question, the Specific Matter Exclusion does not apply because "that portion of Loss" for the defense of the pull-forward allegations did not result from any Specific Matter that is described in the exclusion.

Endorsement 2 to the 2017–2018 Primary Policy, the Specific Matter Exclusion, provides the standard to be used in determining whether a new Claim should be treated as arising out of *certain* previously filed Claims, including the Sorenson books and records demand, the Sorenson derivative demand, the Breece Complaint, and the Luger derivative demand.  (ECF No. 1-12.)  It provides:

> The Insurer shall not be liable for that portion of Loss on account of any Claim resulting from any litigation, claim, proceeding, event, or other matter described below, or any Wrongful Act or Interrelated Wrongful Act alleged therein:
>
>> Notice dated September 2, 2016, submitted under Continental Casualty Company ("CNA") policy number 425631668 and all policies written specifically excess thereto (collectively, "the 2016–17 UA D&O Tower"), enclosing the August 11, 2016 Demand Letter for Inspection of Books and Records sent by Levi & Korsinsky LLP on behalf of Chad Sorensen to the Board or Directors of Under Armour, Inc. ("UA")
>>
>> Notice dated November 4, 2016, submitted under the 2016–17 UA D&O Tower, enclosing the October 17, 2016 Demand upon the Board of Directors of UA to Investigate Claims, Initiate Legal Action and Take Necessary and Appropriate Remedial Measures sent by Levi & Korsinsky LLP on behalf of Chad Sorensen to the Board or Directors of UA
>>
>> Notice dated February 16, 2017, submitted under the 2016–17 UA D&O Tower, enclosing the Class Action Complaint styled Brian Breece v. Under Armour, et al. (Case 1:17-cv-00388-RDB) filed on February 1, 2017 in the United States District Court for the District of Maryland
>>
>> Notice dated March 8, 2017, submitted under the 2016–17 UA D&O Tower, enclosing the Shareholder Demand Pursuant to

> Maryland Law sent by Profy Promisloff & Ciarlanto, P.C. on
> behalf of Shawn Luger to Kevin A. Plank, Chief Executive
> Officer and Chairman of the Board of Directors of UA
>
> Interrelated Wrongful Acts means the Wrongful Acts that have as a common
> nexus the fact, circumstance, situation, event, transaction or series of causally
> connected facts, circumstances, situations, events or transactions.

(*Id.*)  As discussed above, the Wrongful Acts alleged in the Breece Complaint and Sorenson and Luger demands were not interrelated with the government investigations.  As such, coverage for "Loss on account of" the government investigations is not precluded by this exclusion.  Accordingly, judgment is entered in favor of the Defendant/Counterclaim Plaintiff Under Armour with respect to Count IV of the Insurers' Amended Complaint.

## III.    The Prior Notice Exclusion (Count V)

Lastly, the Insurers assert that even if the Underlying Matters were Claims first made during the 2017–2018 Policy Period, the Prior Notice Exclusion independently and completely bars coverage for the Underlying Matters.  The "Prior Notice Exclusion," found in Section III.A.1 of the 2017–2018 Primary Policy and amended by Endorsement 4, provides that:

> The Insurer shall not be liable under this Coverage Section for Loss on account
> of that portion of any Claim made against any Insured . . . based upon, arising
> out of, or attributable to any fact, circumstance, or situation which has been the
> subject of any written notice given under any directors and officers liability
> policy of which this Coverage Section is a direct or indirect renewal or
> replacement and accepted by the insurer of such policy as a notice of
> circumstances[.]

(*Id.*)  As discussed above, the allegations in the government investigations and the claims interrelated with them are distinct from the allegations found in the Breece Complaint and the Sorenson and Luger demands.  As such, this exclusion is inapplicable.  Thus, judgment is

entered in favor of the Defendant/Counterclaim Plaintiff Under Armour with respect to Count V of the Insurers' Amended Complaint.

Having found in favor of the Insured on all remaining Counts of the Insurers' Amended Complaint, judgment is also entered in favor of the Defendant/Counterclaim Plaintiff Under Armour with respect to Count III of Under Armour's Counterclaims asserted against the Insurers  (ECF No. 57 *SEALED*).   As such, the only remaining claim in this litigation is Count II of Under Armour's Counterclaims, which alleges breach of contract against the Insurers.  (*Id.*)

## CONCLUSION

For the reasons stated above, Plaintiffs/Counterclaim Defendants' Motion for Judgment on the Pleadings (ECF No. 135 *SEALED*) is DENIED; and Defendant's Motion for Judgment on the Pleadings (ECF No. 139-2 *SEALED*) is GRANTED.

A separate Order follows (ECF No. 165).

Date: March 26, 2024 (ECF No. 164)  
Refiled with redactions on April 15, 2024

/s/  
Richard D. Bennett  
United States Senior District Judge