IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAVIGATORS INSURANCE CO., *et al.*,          *

    *Plaintiffs/Counterclaim-Defendants*,          *

    v.          *          Civil Action No. RDB-22-2481

UNDER ARMOUR, INC.,          *

    *Defendant/Counterclaim-Plaintiff.*          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

This action for declaratory relief originally arose from a coverage dispute between nine insurance company Plaintiffs ("Plaintiffs/Counterclaim Defendants" or "Insurers") and their insured, Defendant/Counter Claimant Under Armour, Inc. ("Defendant" or "Under Armour"), as to directors and officers liability insurance policies ("D&O Policies" or "Policies") across two separate coverage periods: 2016–2017 and 2017–2018. In short, the parties disputed whether Under Armour's separately reported insurance claims regarding (1) a consolidated securities class action and several derivative matters, and (2) government investigations constituted a single insurance claim covered only under the 2016–2017 Policies or separate claims subject to an additional $90 million in coverage under the 2017–2018 Policies. On March 26, 2024, this Court ruled on the parties' cross-motions for judgment on the pleadings as to claims for declaratory judgment, (ECF No. 164 \*SEALED\*; ECF No. 165), denying the Insurers' motion (ECF No. 135-2) and granting Under Armour's motion (ECF No. 139-2). (ECF No. 164 \*SEALED\*.) The parties then reached interim funding agreements under which Plaintiffs paid out a total of approximately $90 million pursuant to

the 2017–2018 D&O Policies.  *See* (ECF No. 178 at 1).  It is undisputed that these interim funding agreements did not contain any language expressly requiring prejudgment interest on the amounts advanced.  Ultimately, on January 20, 2026, the U.S. Court of Appeals for the Fourth Circuit reversed this Court's March 26, 2024, Order, concluding that the claims constituted a single claim not subject to the additional $90 million in coverage under the 2017–2018 Policies.  Under Armour then repaid the $90 million advanced pursuant to the parties' interim funding agreements.

Presently pending before this Court is Insurers' Brief Requesting Pre-Judgment Interest (ECF No. 191-2 *SEALED*).[1]  Under Armour has responded in Opposition (ECF No. 197) to Plaintiffs' request for pre-judgment interest.  Additionally, the parties have filed separate Proposed Final Judgment Orders (ECF No. 196-1 *SEALED* (Insurers' Proposed Final Judgment Order); ECF No. 194-1 *SEALED* (Under Armour's Proposed Final Judgment Order)).  Although the parties provide largely similar proposed final judgment orders, they dispute whether the final judgment should include a monetary judgment against Under Armour for $90 million, plus prejudgment interest.  *Compare* (ECF No. 196-1 *SEALED* ¶ 3 (proposing judgment of $10 million in favor of each Plaintiff with corresponding prejudgment interest)) *with* (ECF No. 194-1 *SEALED* (declining to include monetary judgment in proposed order)).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons set forth below, Insurers' Brief Requesting Pre-Judgment Interest (ECF No. 191-2 *SEALED*) is DENIED.

---

[1]  Eight of the nine Insurers have joined this brief, but Navigators Insurance Company and Under Armour have separately "resolved between them all issues regarding interest on money advanced under the 2017–2018 Navigators policy."  (ECF No. 194 *SEALED* at 6 n.1.)

## BACKGROUND

The pending dispute as to prejudgment interest and any monetary judgment relates to the parties' mid-litigation interim funding agreements. Thus, the background below chronologically summarizes both procedural and relevant factual history.

### I.    Initial Coverage Dispute & Declaratory Judgment Action

Defendant/Counter Claimant Under Armour maintained various directors and officer liability policies ("D&O Policies" or "Policies") with Plaintiffs/Counterclaim Defendants Endurance American Insurance Company;[2] Continental Casualty Company ("Continental"); Swiss Re Corporate Solutions America Insurance Company ("Swiss Re"); National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National"); Freedom Specialty Insurance Company ("Freedom"); QBE Insurance Corporation ("QBE"); Argonaut Insurance Company ("Argo"); XL Specialty Insurance Company ("XL"); Allied World National Assurance Company ("Allied World"); and Navigators Insurance Company ("Navigators") (collectively, "Plaintiffs" or "Insurers"). The relevant Policies span two coverage periods: 2016–2017 and 2017–2018. (ECF No. 164 *SEALED* at 8–9.) Under Armour made separate claims under the Policies: (1) during the 2016–2017 coverage period, it reported claims regarding the consolidated securities class action and derivative matters filed against it; and (2) during the 2017–2018 coverage period, it reported a claim regarding its investigation by the Securities and Exchange Commission and the Department of Justice (collectively, the "Underlying Matters"). (*Id.* *SEALED* at 1; ECF No. 23-1 at 7.) The parties disputed the

---

[2]  On May 18, 2023, this Court approved the parties' Stipulation of Dismissal With Prejudice as to Endurance American Insurance Company. *See* (ECF No. 134, Order; ECF No. 133, Stipulation).

finite question of whether the Policies' language rendered these separately reported claims one claim covered only under the 2016–2017 policy period or separate claims subject to approximately $90 million in additional coverage under the 2017–2018 policy period.

On January 26, 2023, Plaintiffs filed the operative seven-Count Amended Complaint (ECF No. 29-1 *SEALED*) seeking a declaratory judgment that Under Armour's insurance claims constituted one claim covered only under the 2016–2017 Policies. Plaintiffs' Prayer for Relief requested declarations that there is no coverage under the 2017–2018 Policies but did not seek damages or interest. (ECF No. 29-1 *SEALED* at 25–26.) Under Armour then asserted counterclaims for breach of contract and for a declaratory judgment that the claims are subject to coverage under both Policies.[3] *See* (ECF No. 57 *SEALED*). On March 26, 2024, this Court granted Under Armour's Motion for Judgment on the Pleadings as to its Counterclaim for declaratory judgment (ECF No. 139-2 *SEALED*), denied Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 135 *SEALED*), dismissed five Counts of the Amended Complaint and entered judgment in favor of Under Armour as to Count III of its counterclaims.[4] (ECF No. 169; ECF No. 164 *SEALED*; ECF No. 165.) This judgment did not finally adjudicate the case because it left pending Under Armour's counterclaim for breach of contract. Thus, Plaintiffs filed a Motion to Certify the Court's March 26, 2024, Order as a Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) (ECF No. 170) ("Insurers' Motion to Certify").

---

[3] Under Armour also asserted a counterclaim against Endurance American Insurance Company, which was dismissed with prejudice pursuant to the parties' May 2023 Stipulation (ECF No. 133). *See* (ECF No. 134).
[4] The remaining two Counts of the Amended Complaint related exclusively to original Plaintiff Endurance American Insurance Company and were dismissed pursuant to the parties' Partial Stipulation of Dismissal with Prejudice (ECF No. 133). *See* (ECF No. 134).

## II.     Interim Funding Agreements

While awaiting this Court's ruling as to Insurers' Motion to Certify, the parties reached three interim funding agreements.  Insurers notified the Court of these agreements in November 2024.  *See* (ECF No. 178).  Pursuant to the agreements, the Insurers each agreed to advance their remaining $10 million 2017–2018 policy limits—totaling approximately $90 million—to Under Armour during the pendency of litigation, and Under Armour agreed to repay such funds upon any subsequent determination that the underlying claims were not covered under the 2017–2018 Policies.  These agreements included: (1) an agreement between Under Armour and Continental and Swiss Re ("Continental Agreement") (ECF No. 194-2 *SEALED* at 5–11); (2) an agreement between Under Armour and Freedom, QBE, Argo, Allied World, and Navigators ("Freedom Agreement") (*id.* *SEALED* at 13–23); and (3) an Agreement with National Union ("National Union Agreement") (*id.* *SEALED* at 25–30) (collectively, "Interim Funding Agreements").  All parties appear to agree that the Insurers made lump sum payments to Under Armour rather than periodically providing payments under the Interim Funding Agreements.  *See* (*id.* *SEALED* at 3 ¶ 8; ECF No. 191-2 *SEALED* at 12–13).  Notably, the Interim Funding Agreements contain almost identical language as to reimbursement.

### A.  Continental Agreement

Pursuant to the Continental Agreement, Continental and Swiss agreed to advance up to their respective liability limits of $10 million in Defense Costs "subject to Under Armour's obligation to repay these amounts pursuant to Section VII . . . of the 17–18 Primary Policy in

the event the Claimed Defense Costs are ultimately determined not to be covered under the

Policies." (ECF No. 194-2 *SEALED* at 6 ¶ 8.) In relevant part, the parties agreed that:

> For the avoidance of doubt, Under Armour agrees to comply with Section VII . . . of the 17–18 Primary Policy which obligates Under Armour to repay the Insurers any Defense Costs finally established not to be insured under the Policies, and *Under Armour further explicitly agrees to repay each Insurer the amount of its Payment (plus any interest that may [be] awarded by the court)* in accordance with a final non-appealable adjudication in the Coverage Action or any other action regarding the existence and/or extent of coverage provided by each Insurer's Policy or Policies . . . *In the event of such a determination, the amount to be repaid to each Insurer shall be deemed to have been a debt due and owing as of the date(s) each Insurer's Payment was made hereunder.*

(ECF No. 194-2 *SEALED* at 7 ¶ 9 (emphasis added).)

### B. Freedom Agreement

Pursuant to the Freedom Agreement, Freedom, QBE, Argo, Allied World, and

Navigators each agreed "to advance the unexhausted limits" of their respective Policies "in

connection with a settlement of the [underlying] Securities Litigation." (ECF No. 194-2

*SEALED* at 14 ¶ 7.) In relevant part, the Freedom Agreement provided that the insurers

retained the following right to reimbursement:

> Under Armour agrees to repay each Insurer the amount of its Payment (plus any interest that may [be] awarded by the court) in accordance with a final non-appealable adjudication in the Coverage Action or any other action regarding the existence and/or extent of coverage provided by each Insurer's Policy or Policies . . . In the event of such a determination, the amount to be repaid to each Insurer shall be deemed to have been a debt due and owing as of the date(s) each Insurer's Payment was made hereunder.

(ECF No. 194-2 *SEALED* at 15 ¶ 9 (emphasis added).)

### C. National Union Agreement

Pursuant to the National Union Agreement, National Union agreed to advance $10

million in defense and settlement costs for the underlying actions. (ECF No. 194-2

*SEALED* at 26 ¶ 9.)  In relevant part, the parties further agreed to National Union's right to reimbursement as follows:

> For the avoidance of doubt, notwithstanding that Section VII . . . of the 17-18 Primary Policy obligates Under Armour to repay National Union any Defense Costs finally established not to be insured under the Policies, *Under Armour explicitly agrees to repay National Union the amount of its Defense Costs Payment and/or Settlement Costs Payment (plus any interest that may [be] awarded by the court) in accordance with a final non-appealable adjudication* in the Coverage Action or any other action regarding the existence and/or extent of coverage provided by National Union's 17-18 Policy . . . .

(*Id.* *SEALED* at 27 ¶ 11 (emphasis added).)[5]

### III.    Appeal to the United States Court of Appeals for the Fourth Circuit

On December 19, 2024, this Court granted Insurers' Motion to Certify, certified its March 26, 2024, Order as a final judgment pursuant to Rule 54(b), and stayed proceedings pending appeal to the United States Court of Appeals for the Fourth Circuit.  *See* (ECF No. 179).  In its Memorandum Order granting Insurers' Motion to Certify, this Court listed as a factor in support of Rule 54(b) certification that Insurers' advancement of their policy limits diminished the seriousness of Under Armour's pending counterclaim for breach of contract. (ECF No. 179 at 8–9.)  On January 16, 2025, Plaintiffs appealed this Court's March 26, 2024, Order to the United States Court of Appeals for the Fourth Circuit.  (ECF No. 180.)

Approximately a year later, on January 20, 2026, the Fourth Circuit issued an opinion reversing this Court's March 26, 2024, Order and holding that, under the Policies' language, Under Armour's claims constituted the same insurance claim not entitled to additional

---

[5] The referenced provision of the Primary Policy between Under Armour and National Union (1) required National Union to advance Defense Costs which it believes to be covered pursuant to reasonably acceptable defense bills within 60 days of receipt of such bills; and (2) provided that Under Armour would repay—severally according to its respective interest—"any Defense Costs finally established not to be insured."  (ECF No. 194 *SEALED* at 10–11 (quoting (ECF No. 59-1)).)

coverage under the 2017–2018 Policies. *See* (ECF Nos. 183, 183-1). The Fourth Circuit briefly stayed the Mandate as to that appeal before denying Under Armour's request for rehearing en banc. *See* (ECF Nos. 184, 185). The Mandate issued on February 26, 2026. (ECF No. 186.)

### IV.    Under Armour Reimburses Insurers the Principal $90 Million

On February 27, 2026, this Court held an off-the-record telephone conference in which all counsel agreed that the case would remain stayed pending their submissions of a Proposed Judgment Order. *See* (ECF No. 188). Between March 27, 2026, and April 16, 2026, Under Armour repaid each of the Insurers the funds advanced pursuant to the Interim Funding Agreements. (ECF No. 194-2 *SEALED* at 2–3 ¶¶ 7–8.) Specifically, on March 27, 2026, Under Armour repaid Swiss Re, National Union, Freedom, QBE, XL, Allied World, and Navigators. (*Id.* *SEALED* at 3 ¶ 8.) On March 31, 2026, it repaid Continental, and on April 16, 2026, it repaid Argo. (*Id.* *SEALED*.) All parties agree that Under Armour has repaid the principal advanced prior to the final judgment contemplated in the Interim Funding Agreements. *See* (*id.* *SEALED*; ECF No. 191-2 *SEALED* at 7).

Counsel for the parties then notified the Court of a dispute as to whether the final judgment should require Under Armour to pay eight of the nine Insurers[6] prejudgment interest as to the funds advanced pursuant to the Interim Funding Agreements. This Court set a briefing schedule as to the issue of prejudgment interest. (ECF No. 189.) Consistent with that schedule, Insurers have submitted a Brief Requesting Prejudgment Interest (ECF No. 191 *SEALED*), to which Under Armour has responded in Opposition (ECF No. 197).

---

[6] As noted above, Navigators and Under Armour have separately resolved the prejudgment interest issue. (ECF No. 194 *SEALED* at 6 n.1.)

Separately, Under Armour has filed a Memorandum in Support of Final Judgment Order (ECF No. 194 *SEALED*), and Insurers have filed an Opposition to Under Armour's Proposed Final Judgment Order (ECF No. 199 *SEALED*). This matter is now ripe for review.

## STANDARD OF REVIEW

Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* § 2201(a). Additionally, "after reasonable notice and hearing," a court may grant "[f]urther necessary or proper relief based on a declaratory judgment or decree . . . ." *Id.* § 2202. The Federal Rules of Civil Procedure provide that a final judgment "must be set out in a separate document," Fed. R. Civ. P. 58(a), and "should not include recitals of pleadings, a master's report, or a record of prior proceedings," *id.* 54(a). The final judgment should, however, "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *Id.* 54(c).

## ANALYSIS

The parties raise two disputes regarding any final judgment in this matter. First, they heavily dispute whether Under Armour should be required to pay prejudgment interest as to the funds advanced pursuant to the Interim Funding Agreements. Second, they dispute whether a final judgment should include a judgment that Under Armour owes each Insurer $10 million for a total principal owed of $90 million.

## I.    Prejudgment Interest

The Federal Declaratory Judgment Act, 28 U.S.C. § 2202, authorizes federal courts to grant "[f]urther necessary or proper relief . . . [,]" including prejudgment interest. *See Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 375 & n.9 (4th Cir. 2018) (affirming judgment including prejudgment interest in action for declaratory relief where parties did not preserve arguments as to prejudgment interest). Where, as here, a court has diversity jurisdiction of the action for declaratory relief, "[s]tate law 'governs the award of prejudgment interest . . . .'" *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999)); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, the dispute as to prejudgment interest pertains to the Interim Funding Agreements under which Insurers paid out approximately $90 million pending their appeal to the U.S. Court of Appeals for the Fourth Circuit.

Insurers raise two arguments for prejudgment interest. First, relying on the language of the Interim Funding Agreements, they contend that they are entitled to prejudgment interest as a matter of right under Maryland law. (ECF No. 191-2 *SEALED* at 9–11; ECF No. 199-2 *SEALED* at 9–14.) Second, and alternatively, they assert that this Court should exercise its discretion to award prejudgment interest based on equitable and contract principles. (ECF No. 191-2 *SEALED* at 11–12; ECF No. 199 *SEALED* at 13–14.) In Opposition, Under Armour argues that neither the Interim Funding Agreements nor broader principles of equity or contract authorize prejudgment interest in this case. (ECF No. 197 at

10

13–31.)  It asserts that prejudgment interest is not appropriate because Insurers' pleadings did not reference monetary damages, including interest.[7]  (*Id.* at 10, 13.)

### A.  Prejudgment interest as of right

Plaintiffs are not entitled to prejudgment interest as a matter of right.  As Maryland courts have recognized, "[p]rejudgment interest is awarded so as to place the injured party in the same position he or she would have occupied had the defaulting party performed as he or she was supposed to perform."  *Brethren Mut. Ins. Co. v. Filsinger*, 458 A.2d 880, 885 (Md. Ct. Spec. App. 1983); *accord Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965, 969 (4th Cir. 1987).  As Judge Hollander of this Court has noted, Maryland applies "three basic rules governing the allowance of prejudgment interest."  *Baker's Exp., LLC v. Arrowpoint Capital Corp.*, Civ. No. ELH-10-2508, 2012 WL 4370265, at *27 (D. Md. Sep. 20, 2012) (quoting *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001)).  Specifically, under Maryland law: (1) prejudgment interest as a matter of right applies where "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment"; (2) prejudgment interest is not permitted "in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement"; and (3) "[b]etween these poles of allowance as of right and non-allowance is a broad category of contract cases in which the allowance of prejudgment interest is within the

---

[7] Notwithstanding Insurers' failure to request monetary damages or interest in their original pleadings, relief granted pursuant to 28 U.S.C. § 2202 "need not have been demanded *or even proved* in the original action for declaratory relief."  *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 851 (4th Cir. 1992) (emphasis in original) (quoting *Edward B. Marks Musi Corp. v. Charles K. Harris Music Pub. Co.*, 255 F.2d 518, 522 (2d Cir.) *cert. denied* 358 U.S. 831 (1958)); *see also* Fed. R. Civ. P. 54(c) (authorizing court in final judgment to grant "the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Baker's Exp., LLC v. Arrowpoint Cap. Corp.*, Civ. No. ELH-10-2508, 2012 WL 4370265, at *26 (D. Md. Sep. 20, 2012) (collecting cases holding that prejudgment interest is not waived if not requested in pleadings).

discretion of the trier of fact." *Id.* at \*27 (quoting *Buxton*, 770 A.2d at 165).  Under these guiding principles, "prejudgment interest as a matter of right is the exception rather than the rule." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 777 (Md. 2004) (citing *Buxton*, 770 A.2d at 152).

Prejudgment interest may be awarded "as a matter of right when 'the obligation to pay and the amount due' is 'certain, definite, and liquidated by a specific date prior to judgment' such that 'the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'" *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 248 A.3d 1044, 1051 (Md. 2021) (quoting *Buxton*, 770 A.2d at 165).  An obligation and amount are "certain, definite, and liquidated" where they are "calculable." *Harford Cnty. v. Saks Fifth Ave. Distrib. Co.*, 923 A.2d 1, 14 (Md. 2007).  Relatedly, an "amount is 'liquidated' if it is 'settled or determined, [especially] by agreement.'" *Bennett v. Ashcraft & Gerel, LLP*, 303 A.3d 1237, 1271 (Md. 2023) (alteration in original) (quoting *Balt. Cnty. v. Aecom Servs., Inc.*, 28 A.3d 11, 41 n.19 (Md. Ct. Spec. App. 2011)).  As Maryland's highest court has explained, "[l]egal fees are not quantifiable prior to the completion of representation, and thus legal fees in a pending action cannot appropriately be classified as liquidated under Maryland law." *Nationwide Prop. & Cas. Ins. Co.*, 248 A.3d at 1055.  For this reason, "prejudgment interest on defense costs in an ongoing suit is a matter of discretion for the trier of fact." *Id.* at 1056.

Nevertheless, prejudgment interest as a matter of right may "arise[] under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds or under contracts providing for the payment of interest . . . ." *Id.* at 1051 (quoting *Buxton*, 770 A.2d at 165).  In this case, Insurers assert that "both Under Armour's obligation to repay the Insurers and the amount of its obligation were fixed on specific dates

prior to judgment" because "[t]he Interim Funding Agreements established the Insurers' rights to reimbursement of both principal and interest." (ECF No. 191-2 *SEALED* at 9.) That is, they contend that they are entitled to prejudgment interest as a matter of right "under contracts providing for the payment of interest . . . ." *Nationwide Prop. & Cas. Ins. Co.*, 248 A.3d at 1051 (quoting *Buxton*, 770 A.2d at 165). As detailed below, however, the Interim Funding Agreements do not provide for prejudgment interest as a matter of right.

Judge Hollander of this Court has explained that a party is not entitled to prejudgment interest where "the contractual language did not provide for payment on a date certain." *Hart v. Pac. Rehab of Md., P.A.*, Civ. No. ELH-12-2608, 2013 WL 5212309, at *22 (D. Md. Sep. 13, 2013). "The rationale is that, where such certainty exists, 'the effect of the debtor's withholding payment [is] to deprive the creditor of the use of a fixed amount as of a known date,' and mandatory prejudgment interest is meant to rectify the situation." *Metromont Corp. v. Allan Myers, L.P.*, Civ. No. DKC-18-3928, 2021 WL 3367772, at *13 (D. Md. Aug. 3, 2021) (alteration in original) (quoting *Buxton*, 770 A.2d at 165). The Fourth Circuit has suggested that where the sum of money at issue "was genuinely disputed," it is not "readily ascertainable and therefore liquidated" under Maryland law. *In Re J.T.R. Corp.*, 958 F.2d 602, 606 (4th Cir. 1992). Instead, "[c]ourts must determine whether a contract case" warrants prejudgment interest as a matter of right "based on their level of certainty as to the existence, amount, and due date of an obligation to pay." *Parkway 1046, LLC*, 961 F.3d at 312.

The Interim Funding Agreements in this case do not contemplate prejudgment interest as a matter of right. As an initial matter, the agreements do not provide that "'the obligation to pay and the amount due' is 'certain, definite, and liquidated by a specific date prior to

13

judgment' such that 'the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'" *Nationwide Prop. & Cas. Ins. Co*, 248 A.3d at 1051 (quoting *Buxton*, 770 A.2d at 165); *see also Parkway 1046, LLC*, 961 F.3d at 312 (emphasizing that interest accrues from date that "'obligation to pay and the amount due' were both 'certain'" (quoting *First Va. Bank v. Settles*, 588 A.2d 803, 807 (Md. 1991))); *Gordon v. Posner*, 790 A.2d 675, 698 (Md. Ct. Spec. App. 2002) *cert. denied* 798 A.2d 552 (Md. 2002) ("[A] right to prejudgment interest only exists when liability *and* damages are certain . . . ." (emphasis in original)).  Where "the amount was certain, but the liability uncertain . . . a legitimate dispute as to the obligation to pay deprives the claimant of an absolute right to interest, and places the case into that category where interest is discretionary with the fact-finder." *Gordon*, 790 A.2d at 698; *accord KeraLink Int'l, Inc. v. Geri-Care Pharms. Corp.*, 60 F.4th 175, 187 (4th Cir. 2023).  In this case, by their very nature as interim agreements for disputed coverage, the Interim Funding Agreements recognize that the obligation to pay is uncertain pending a "final non-appealable adjudication in th[is] Coverage Action . . . ." (ECF No. 194-2 *SEALED* at 7 ¶ 9, 15 ¶ 9, 27 ¶ 11.)  Put differently, the Interim Funding Agreements by their plain language contemplate that the obligation to pay is so genuinely disputed as to require judicial intervention.[8]  The existence of such "a legitimate dispute as to" Insurers' obligation to pay, and, concomitantly, Under Armour's obligation to repay the funds, "deprives [Insurers] of an absolute right to interest" in this case.  *Gordon*, 790 A.2d at 698.

---

[8] Whether a disputed insurance claim relates to a claim made during a prior coverage period raises finite legal questions involving contract interpretation.  Since its decision reversing this Court's March 26, 2024, Order in this matter, for example, the Fourth Circuit considered an almost identical issue in *Navigators Insurance Company v. Avertest, LLC*, No. 25-1977, 2026 WL 1662164 (4th Cir. June 9, 2026).

Nor does the language of the Interim Funding Agreements impose a separate obligation for Under Armour to pay prejudgment interest.  First, for the same reasons discussed above, the language that "[i]n the event of such a determination, the amount to be repaid to each Insurer shall be deemed to have been a debt due and owing as of the date(s) each Insurer's Payment was made hereunder" cannot justify prejudgment interest as a matter of right.  (ECF No. 194-2 *SEALED* at 7 ¶ 9)); *see also* (*id.* *SEALED* at 26 ¶ 11, at 15 ¶ 9). Such language does not overcome the parties' genuine dispute as to whether Under Armour would be obligated to repay the funds.  Indeed, the parties required a final, non-appealable judgment in favor of Insurers to trigger Under Armour's obligation to repay the funds.  (*Id.* *SEALED* at 7 ¶ 9, 26 ¶ 11, 15 ¶ 9.)  Thus, "a legitimate dispute as to the obligation to pay" existed until that final, non-appealable judgment issued.[9]  *Ver Brycke v. Ver Brycke*, 822 A.2d 1226, 1246 (Md. Ct. Spec. App. 2003) (quoting *Gordon*, 70 A.2d at 698) *rev'd on other grounds* 843 A.2d 758 (Md. 2004); *see also* (ECF No. 191-2 *SEALED* at 10 (noting that Under Armour's obligation to repay each Insurer "upon judgment in the Insurers' favor")).

Second, by their plain language, the Interim Funding Agreements contemplate discretionary interest.  "Maryland . . . follow[s] the law of objective interpretation of contracts, giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean[.]"  *Towson Univ. v. Conte*, 862 A.2d 941, 946–47 (Md. 2004) (internal citations omitted).  None of the Interim Funding Agreements "explicitly provided for the payment of prejudgment interest."  *First Kuwaiti Gen. Trading & Contracting*

---

[9] Technically, as all parties recognize, no final, non-appealable judgment has issued until this Court's final judgment.  Nevertheless, all parties agree that the Fourth Circuit's decision resolved the underlying substantive coverage dispute at issue in this case.

*W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, 141 F.4th 522, 530 (4th Cir. 2025) (affirming discretionary denial of prejudgment interest where stipulations did not explicitly provide for prejudgment interest). Rather, all the Interim Funding Agreements require Under Armour, upon issuance of a final, non-appealable judgment in Insurers' favor "to repay each Insurer the amount of its Payment (plus any interest that *may [be] awarded by the court*) . . . ." (ECF No. 194-2 *SEALED* at 7 ¶ 9, at 26 ¶ 11, 15 ¶ 9 (emphasis added).) The use of such permissive language relative to interest indicates that the parties did not agree to prejudgment interest as a matter of right. *See, e.g.*, *Cnty. Comm'rs of Charles Cnty. v. St. Charles Assocs. Ltd. P'ship*, 784 A.2d 545, 561 (Md. 2001) (recognizing words are given their ordinary meaning in contract interpretation and "[o]rdinarily, 'may' is permissive in nature" (quoting prior opinion in same case)); *Championship Tournaments, LLC v. U.S. Youth Soccer Ass'n, Inc.*, Civ. No. ELH-18-258, 2019 WL 528174, at *6–7 (D. Md. Feb. 8, 2019) (construing use of "may" in contractual forum selection clause to be "permissive"). Thus, this language does not indicate any agreement that Insurers are entitled to prejudgment interest as a matter of right.

### B. Discretionary prejudgment interest

This case instead falls into the "broad category of contract cases in which the allowance of pre-judgment interest is within the discretion of the trier of fact." *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001). Where, as here, a party has raised a jury demand but the case is resolved prior to trial, the court may exercise the trier-of-fact's discretion as to prejudgment interest. *See KeraLink Int'l, Inc.*, 60 F.4th at 188. As explained above, prejudgment interest "compensate[s] an aggrieved party for the loss of use and income from money due to it[.]" *Nationwide Prop & Cas. Ins. Co.*, 248 A.3d at 1051–52. When awarding prejudgment interest as

16

a matter of discretion, courts must balance "the scales of equity and justice" considering the facts of a particular case. *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 848–49 (D. Md. 2005); *see also Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 1022 (Md. Ct. Spec. App. 2007) *aff'd* 962 A.2d 722 (Md. 2008) ("The exercise of discretion to award prejudgment interest must be based on the 'equity and justice appearing between the parties and a consideration of all the circumstances.'" (quoting *Ver Brycke*, 822 A.2d at 1246)).  Thus, discretionary prejudgment interest may be appropriate "when the defendant has made no attempt to meet the plaintiff half way when it became clear that some amount of money was owed." *Imgarten*, 383 F. Supp. 2d at 848 (first citing *Crystal v. West & Callahan, Inc.*, 614 A.2d 560, 572 (Md. 1992); and then citing *I.W. Berman Props. v. Porter Bros., Inc.*, 344 A.2d 65, 77 (Md. 1975)).

In this case, it is undisputed that Under Armour has already repaid in full the principal $90 million advanced by Insurers pursuant to the Interim Funding Agreement.[10]  The parties heavily and genuinely disputed whether such funds applied to the insurance claim, and they entered the Interim Funding Agreements after this Court's Order that the Policies entitled Under Armour to those funds.  That is, the parties negotiated and entered the Interim Funding Agreements during litigation and could have addressed prejudgment interest therein. *See, e.g.*, *First Kuwaiti Gen. Trading & Contracting W.L.L.*, 141 F.4th at 530 (declining to grant discretionary prejudgment interest in part because parties' stipulations failed to "explicitly provide[] for the payment of" such interest).  Although Insurers were unable to retain and

---

[10]  Although Under Armour appears to contend that this timely repayment negates any entitlement to prejudgment interest, the principal need not remain outstanding to award prejudgment interest. *See, e.g.*, *Skipper v. CareFirst BlueChoice, Inc.*, 332 A.3d 646, 658 (Md. App. Ct. 2025) ("[E]ven where the principal amount of a judgment has been paid before the judgment issues, a court can still issue the judgment, including economic damages for the principal amount owed and pre-judgment interest thereon, and simply deem the principal portion of the judgment already satisfied.").

invest these funds while Under Armour possessed them, they voluntarily chose to extend the funds pursuant to the Interim Funding Agreements without explicitly including any entitlement to prejudgment interest.

As this Court noted when certifying the March 26, 2024, Order as a final judgment for appeal, the Interim Funding Agreements "tip[ped] the balance" in Insurers' favor to authorize certification of that Order as a final judgment. (ECF No. 179 at 9.) Thus, Insurers leveraged the Interim Funding Agreements to their advantage to facilitate the resolution of this litigation. Under Armour also benefitted from the Interim Funding Agreements, which gave it access to defense funds notwithstanding the ongoing coverage dispute. It does not serve equity or justice to grant discretionary prejudgment interest where both parties voluntarily negotiated and benefitted from the Interim Funding Agreements, and Under Armour has already complied with its forthcoming contractual obligation to repay in full the principal funds advanced pursuant to those agreements. Under Armour's prompt repayment of the principal underscores that it has not breached any contract or otherwise prolonged repayment such that discretionary prejudgment interest would serve equity or justice. *See, e.g.*, *Fraidin v. Weitzman*, 611 A.2d 1046, 1071 (Md. Ct. Spec. App. 1992) ("Prejudgment interest is an aspect of damage which is awarded to compensate a plaintiff for the loss of use of money."); *KeraLink Int'l, Inc.*, 60 F.4th at 187–88 (affirming discretionary grant of prejudgment interest based in part on determination that "defendants partly were responsible for prolonging the proceedings in the district court").

## II.    Language of Final Judgment

Finally, the parties also dispute whether any final judgment should include a determination that Under Armour owes each Insurer $10 million for a total owed of $90 million.[11]  Under Armour contends that such language is unnecessary because it has already repaid the principal funds, while Insurers seek to include the monetary judgment in any final judgment.  *Compare* (ECF No. 194-1 *SEALED* at 1 ¶ 2) *with* (ECF No. 191-6 *SEALED* at 1 ¶ 3, at 2).  For the reasons set forth above, Insurers are not entitled to prejudgment interest in this case.  Furthermore, because it is undisputed that Under Armour has already repaid Insurers the principal $90 million, final judgment need not include such a monetary judgment.

Insurers in this case did not initially seek monetary damages but requested declarations that the 2017–2018 Policies did not provide coverage for the Underlying Matters.  (ECF No. 29-1 *SEALED* at 25–26.)  For this reason, the March 26, 2024, Order (ECF No. 165) certified pursuant to Rule 54(b) addressed the parties' competing claims for declaratory relief without any discussion of monetary damages.  *See generally* (ECF No. 164 *SEALED*; ECF No. 165).  Similarly, the Fourth Circuit's decision on appeal addressed only whether the 2017–

---

[11]  The parties' Proposed Judgment Orders also differ in how they propose to address Counts II and III of Under Armour's counterclaims.  Under Armour proposes an order deeming Counts II and III of its counterclaims "dismissed with prejudice," (ECF No. 194-1 *SEALED* at 2 ¶ 4), while Insurers propose an order entering judgment against Under Armour as to all its counterclaims, (ECF No. 191-6 *SEALED*).  The parties limited their briefing to prejudgment interest, however, and did not address these different proposed approaches to the counterclaims.  Count II of Under Armour's counterclaims is a breach of contract claim alleging that Plaintiffs breached their contractual duties under the 2017–2018 Policies, while Count III seeks a declaratory judgment that the relevant portions of the Underlying Matters are covered by the 2017–2018 Policies.  *See* (ECF No. 57 *SEALED* ¶¶ 70–86.)  Pursuant to the Fourth Circuit's explicit holding that the relevant claims are not subject to coverage under the 2017–2018 Policies, Under Armour cannot succeed on either Count II or Count III of its counterclaims.  As to Count III, judgment must be entered against Under Armour.  As to Count II, that claim was not litigated before this Court or the Fourth Circuit.  Thus, dismissal with prejudice is appropriate as to Count II.  Count I of Under Armour's counterclaims was alleged only against Endurance and was dismissed with prejudice pursuant to the parties' Stipulation in May 2023.  (ECF No. 134.)

2018 Policies provided coverage. *See* (ECF No. 183-1 at 28–29 ("Under Armour is not entitled to additional insurance coverage under its 2017–2018 directors and officers insurance policy. For those reasons, the district court's judgment in favor of Under Armour is, REVERSED.")). Although the Federal Declaratory Judgment Act authorizes "[f]urther necessary or proper relief[,]" 28 U.S.C. § 2202, Insurers' requested monetary relief is not necessary here because all parties agree that Under Armour has already repaid the $90 million principal. *See, e.g.*, *Newbill v. United States*, 441 F. App'x 184, 189 (4th Cir. 2011) (concluding "that the district court erred by entering a judgment against [appellant] for the disputed amount of $99,566.43, which he had already paid, thus effectively requiring him to pay that portion of the penalty twice" and reversing that portion of final judgment).

## CONCLUSION

For the reasons stated above, Insurers' Brief Requesting Prejudgment Interest (ECF No. 191-2 *SEALED*) is DENIED. Consistent with Federal Rule Civil Procedure 58(a), a separate final judgment order shall issue.

A separate Order follows.

Date: July 7th, 2026

_____
Richard D. Bennett
United States Senior District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NAVIGATORS INSURANCE CO., *et al.*, | * | |
| *Plaintiffs/Counterclaim-Defendants*, | * | |
| v. | * | Civil Action No. RDB-22-2481 |
| UNDER ARMOUR, INC., | * | |
| *Defendant/Counterclaim-Plaintiff.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this 7th day of July 2026 HEREBY ORDERED that:

1. The Stay Order (ECF No. 188; ECF No. 189) is LIFTED;

2. Insurers' Brief Requesting Prejudgment Interest (ECF No. 191-2 *SEALED*) is DENIED; and,

3. The Clerk of Court shall transmit copies of this Order and accompanying Memorandum Opinion to counsel.

_____
Richard D. Bennett
United States Senior District Judge

1